**HOLIDAY INNS, INC. (94–6365),
Plaintiff–Appellee, Cross–
Appellant,**

v.

**800 RESERVATION, INC. (94–6326),
Earthwinds Travel, Inc. (94–6328), and
Call Management Systems, Inc. (94–
6257), Defendants–Appellants, Cross–Ap-
pellees.**

Nos. 94–6257, 94–6326, 94–
6328 and 94–6365.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 28, 1995.

Decided June 24, 1996.

D. Michael Swiney, Thomas A. Bickers, and Andrew R. Tillman (argued and briefed), Paine Swiney & Tarwater, Knoxville, TN, for plaintiff–appellee, cross–appellant.

Andrew C. Troutman, O'Neil, Parker & Williamson, Knoxville, TN, Robert M. Newbury (argued and briefed), Kimberly White Alcantara (briefed), Pattishall, McAuliffe, Newbury, Hillard & Geraldson, Chicago, IL, Herbert S. Moncier (briefed), Knoxville, TN, and David T. Black, Kizer & Black, Maryville, TN, for defendants–appellants, cross–appellees.

Before: BOGGS and DAUGHTREY, Circuit Judges; McKEAGUE, District Judge.[*]

DAUGHTREY, Circuit Judge.

Holiday Inns, Inc., filed this Lanham Act suit against the defendants, alleging unfair competition and infringement of its trademark telephone number, 1–800–HOLIDAY, known as a "vanity number." The defendants, Call Management Systems, Inc. (a consulting firm that obtains and services 1–800 telephone numbers for businesses), 800 Reservations, Inc. (an agency that makes reservations for a number of hotel chains, including Holiday Inns), and Earthwinds Travel, Inc. (a travel agency) had secured the use and were engaged in using a telephone number that potential Holiday Inns customers frequently dial by mistake when they unintentionally substitute the number zero for the letter "O." That number, 1–800–405–4329, corresponds to the alphanumeric 1–800–H[zero]LIDAY, known in the trade as a "complementary number." It is referred to in this opinion as "the 405 number" to distinguish it from the Holiday Inns numeric, 1–800–465–4329. The district court, although noting that the defendants were violating only the "spirit" and not the "letter" of the Lanham Act, nevertheless granted Holiday Inns partial summary judgment and permanently enjoined 800 Reservations and Call Management from using the 405 number. The court, however, declined to award the plaintiff enhanced costs and attorneys fees.

The defendants appeal the ruling on the merits, and Holiday Inns cross-appeals the district court's denial of costs and fees. For the reasons stated below, we conclude that the defendants' use of the 405 number did not violate the Lanham Act, and we therefore reverse the judgment entered in the district court except as to the denial of costs and fees, which we affirm.

## I.

Since 1952, Holiday Inns has operated an international chain of hotels through both franchise agreements and on its own, utilizing the name "Holiday Inn." The hotel chain has advertised extensively and has offered its products and services throughout the United States. The company owns, operates, and licenses approximately 1,300 hotels in the United States and spends between $20,000,000 and $30,000,000 per year on advertising. As a result of its efforts, the district court found that Holiday Inns has earned favorable recognition and acceptance by the traveling public. Holiday Inns, Inc. owns registration in the United States Patent and Trademark Office for several service marks, including the "Holiday Inn" mark, which was registered in 1954.

Holiday Inns has invested a great deal of time, money, and effort to increase the traveling public's awareness of its 1–800–HOLIDAY phone number, which can be dialed to secure reservations or to obtain information about lodging facilities. According to the vice president of Holiday Inns's marketing, the company's vanity number is included in virtually all of its extensive media, print, and radio advertisements. The telephone number is not, however, officially registered as a trademark.

Call Management operates as a "service bureau," formed to assist business customers in obtaining and processing their 1–800 numbers. Albert H. Montreuil, the 50% owner of Call Management, admitted that through his experience with Call Management and its 1–

[*] The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

800 numbers, he became aware of the fact that consumers frequently misdial vanity numbers. The most common mistakes made by consumers occur when they dial the number "0" (zero) for the letter "O" and the number "1" (one) for the letter "I." If the complementary numbers dialed in error are not in active use, callers receive a busy signal or a recorded message that indicates that the number is not in service.

Indeed, the phenomenon of misdialed vanity numbers is apparently so well known that businesses and hotel chains like the Marriott and Red Roof Inns, for example, subscribe to both their vanity and complementary numbers in order to ensure receiving calls from all their potential customers. Holiday Inns, however, neglected to take this precaution and did not reserve any complementary numbers.

When Montreuil discovered that numbers complementing 1–800–HOLIDAY had not been reserved, he decided, in May 1993, to reserve them for Call Management. In fact, Montreuil freely admitted during the preliminary injunction hearing that his "sole purpose" in choosing the 405 number was to intercept calls from misdialed customers who were attempting to reach Holiday Inns, and he acknowledged that his company reaped benefits in direct proportion to Holiday Inns's efforts at marketing 1–800–HOLIDAY for securing reservations.

On June 15, 1993, Call Management entered into a verbal agreement with defendant Earthwinds, by which Earthwinds agreed to process calls from customers on the 405 number in return for 10% of all commissions received for placing hotel bookings. The parties further agreed that Earthwinds would answer calls on this 800 service until defendant 800 Reservations was ready to begin operations on its own.

On August 18, 1993, Call Management terminated its arrangement with Earthwinds. As a result, the 405 number was not operational from August 18 to August 20, 1993, when it was reactivated for use by 800 Reservations. At that time, however, Holiday Inns filed suit and moved for a temporary restraining order to enjoin defendants' use of the 405 number. It also sought to restrain defendants from using the "Holiday Inns" trade name or trademark in connection with the advertising or sale of products or services, from representing themselves to be connected with Holiday Inns, and from injuring Holiday Inns's business reputation.

At the district court level, one of the principal disagreements between the parties was whether a customer who had dialed Holiday Inns's complementary number would always receive defendants' recorded message. Defendants insisted that a caller dialing the 405 number would hear the following recorded message at the beginning of *every* call:

> Hello. You have misdialed and have not reached Holiday Inns or any of its affiliates. You've called 800 Reservations, America's fastest growing independent computerized hotel reservation service. One of our highly trained hotel reservation specialists will be with you momentarily to provide the Holiday Inns number or to assist you in finding the lowest rate at over 19,000 properties worldwide, including such hotel chains as Holiday Inns, Guest Quarters, Hampton Inn, Sheraton, Comfort Inn, and many more. If you are a member of a hotel's frequent guest program, have that number ready. Please stay on the line, assistance is just a moment away.

They further claimed that the phone answering system was equipped with certain safeguards and that customers could not bypass the recorded message.

Holiday Inns nevertheless offered affidavits to support its contention that the above message did not play at the beginning of every call. The district court, however, found it unnecessary to resolve this factual dispute, because it determined that sufficient factors existed to grant a preliminary injunction even if the purported message was heard by every customer who dialed the 405 number. The district court found that, because Holiday Inns and the defendants use different computerized reservations systems, Holiday Inns suffered two adverse consequences from the defendants' use of the 405 number. First, 800 Reservations might inform a customer that a particular Holiday

Inn had no rooms available when, in fact, vacancies did exist; and, second, a customer would more likely obtain a favorable room rate by contacting Holiday Inns directly, as opposed to contacting 800 Reservations through Holiday Inns's complementary number.[1]

The district court granted Holiday Inns's motion for a temporary restraining order, which it later converted into a preliminary injunction. *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 838 F.Supp. 1247 (E.D.Tenn. 1993). Defendants Call Management and 800 Reservations each moved to modify the preliminary injunction to permit operation of the 405 number with a revised disclaimer explaining Call Management's status as an independent travel agency and further instructing callers how to reach Holiday Inns if they should so desire.[2] Alternatively, the defendants sought the right to use the 405 number for business purposes other than making hotel reservations.

Holiday Inns moved for a partial summary judgment as to the defendants' liability for trademark infringement and unfair competition under the Lanham Act and requested that the district court limit the trial to issues involving the extent and nature of relief to be afforded the plaintiff. The district court granted the motion for partial summary judgment, denied Call Management and 800 Reservations' motion to modify the preliminary injunction, and denied the cross motions for summary judgment filed by the defendants.

Subsequently, the district court entered a final judgment converting its preliminary injunction into a permanent injunction and enjoining Call Management from activating or operating its 405 number. The final order also (1) denied Holiday Inns's request to expand the scope of injunctive relief so as to require defendants to relinquish all rights to the 1–800–405–4329 number; (2) awarded Holiday Inns damages to be paid by Earthwinds in the amount of $6,356.38; and (3) denied Holiday Inns's requests for treble damages and for attorney fees under 15 U.S.C. § 1117.

## II.

■ We review the grant of a motion for summary judgment *de novo,* using the same test employed by the district court. *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994). Thus, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original); *American Cas. Co. v. F.D.I.C.,* 39 F.3d 633, 636 (6th Cir.1994).

■ In order to avoid summary judgment in a Lanham Act case alleging viola-

---

1. The defendants emphasize that the price of a given room is the same whether one makes a reservation through Holiday Inns's internal reservation system or through 800 Reservations. The *average* rate, however, may be lower in cases of direct bookings because Holiday Inns is able to provide group discounts, military reductions, government discounts, and other bargains which travel agencies cannot.

2. Call Management sought to use this revised message which would play each time a customer dialed 1–800–H[zero]LIDAY:

Hello. You have reached Call Management Systems, Inc. If you intended to dial 1–800–HOLIDAY, you have dialed the wrong number. To reach 1–800–HOLIDAY, you must spell

"Holiday" on the key pad by correctly dialing the letter "O" rather than the "Zero" key. If you wish to reach 1–800–HOLIDAY, you must hang up and redial the number correctly.

Call Management Systems, Inc. is not affiliated, associated, connected with, or sponsored by Holiday Inns, Inc. If you are interested in airline, rental car, and hotel information and rates, Call Management Systems, Inc. will be happy to connect you with a travel agent.

To be connected with an independent travel agent, please press "One." Again to reach 1–800–HOLIDAY, you must redial the number correctly.

If you wish to hear this recording again, please press "Two." Thank you.

tions of § 32 (15 U.S.C. § 1114),³ and § 43 (15 U.S.C. § 1125),⁴ the nonmoving party must establish that genuine factual disputes exist concerning those factors that are material to whether confusion is likely in the marketplace as a result of the alleged infringement. *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.,* 931 F.2d 1100, 1107 (6th Cir.1991). The general requirement underlying a showing of the likelihood of confusion is that the public believes that "the mark's owner sponsored or otherwise approved the use of the trademark." *Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831, 834 (6th Cir.1983) (quoting *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 205 (2d Cir.1979)). To assess the consumer's "likelihood of confusion" in the marketplace, this court has identified a number of factors which should be examined, including: (1) strength of the plaintiff's mark; (2) relatedness of the services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care and sophistication; (7) intent of the defendant in selecting the mark; and (8) likelihood of expansion of the product lines using the marks. *Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.,* 670 F.2d 642, 648 (6th Cir.), *cert. denied,* 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982) (citing *Toho Company, Ltd. v. Sears, Roebuck & Co.,* 645 F.2d 788, 790 (9th Cir.1981)).

■ This court considers the question of whether there is a "likelihood of confusion" as a mixed question of fact and law. Thus, when reviewing a district court's decision, we apply a clearly erroneous standard to findings of fact supporting the existence of these "likelihood of confusion" factors, but review *de novo* the legal question of whether those foundational facts actually establish a "likelihood of confusion." *Wynn Oil Co. v. Thomas,* 839 F.2d 1183, 1186 (6th Cir.1988) (citing *Frisch's Restaurant, Inc. v. Shoney's, Inc.,* 759 F.2d 1261, 1264 (6th Cir.1985)).

### III.

■ Holiday Inns claims that the defendants violated the Lanham Act by their "use" of Holiday Inns's trademark. The defendants argue, however, that Call Management never *used* Holiday Inns's registered mark nor any other variant of Holiday Inns's trademark. They only used the phone number, 1–800–405–4329—that is, a number which is neither phonetically nor visually similar to Holiday Inns's trademark, 1–800–HOLIDAY.⁵

The district court agreed with the defendants' argument and found that Call Management never used "1–800–HOLIDAY" or any of Holiday Inns's marks, and "never advertised or publicized anything to do with

**3.** Section 1114(1)(a) provides, in pertinent part:

(1) Any person who shall, without the consent of the registrant—
(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale ... or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ... shall be liable in a civil action by the registrant....
15 U.S.C. § 1114(1)(a).

**4.** Section 1125(a)(1) provides, in pertinent part:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,

connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
15 U.S.C. § 1125(a)(1).

**5.** The defendants concede that "Holiday Inns has trademark rights in its 1–800–HOLIDAY designation." Thus, we need not address the threshold issue of whether 1–800–HOLIDAY, an unregistered cipher, is, indeed, a trademark entitled to protection from infringement. The crux of the defendants' argument is that Holiday Inns's numeric of 1–800–465–4329 is *not* protected as a trademark.

Holiday Inns or its telephone number."[6] The district judge, therefore, found that in this unique case the defendants also did not *create* the consumers' confusion, but that the defendants merely took advantage of confusion already in existence. The district court nevertheless concluded that this behavior was "parasitic" and stated:

> The defendants derive benefit *solely* from Holiday Inns reputation. In fact, defendants have no independent reputation. The consumer is not even aware of defendants' existence until after he has misdialed Holiday Inns' vanity number. If not for Holiday Inns spending millions of dollars on advertising each year, defendants would have no service whatsoever to provide to the consumer. For the defendants to be able to reap profits based solely on the advertising efforts and expenditures of others *seems to be a clear violation of the spirit, if not the letter, of the Lanham Act.*

(Emphasis added.)

The few courts that have addressed similar issues have agreed that telephone numbers may be protected as trademarks and that a competitor's use of a confusingly similar telephone number may be enjoined as both trademark infringement and unfair competition. *See, e.g., Dial–A–Mattress Franchise Corp. v. Page,* 880 F.2d 675, 678 (2d Cir. 1989). In *Dial–A–Mattress,* the plaintiff was the customer of record for the local telephone number 628–8737 in the various area codes of the New York metropolitan region. Dial–A–Mattress Franchise Corp. had advertised extensively its services and its phone number in the area with the phrase "DIAL–A–MATTRESS and drop the last 'S' for savings." *Id.* at 676. The defendant, Page, obtained the right to use 1–800–628–8737 (or 1–800–MATTRES) and promoted his number as 1–800–MATTRESS. *Id.* at 677. Dial–A–Mattress brought suit seeking an injunction and damages on claims of trademark infringement, unfair competition, and unjust enrichment under federal and New York law.

The Second Circuit held that although the term "mattress" is a generic term generally not entitled to protection under trademark law, telephone numbers that correlate with generic terms may be entitled to protection. *Id.* at 678. It further determined:

> [D]efendant's use of the telephone number 1–800–628–8737 was confusingly similar to plaintiff's telephone number 628–8737 in those area code regions in which plaintiff solicited telephone orders, *especially in view of defendant's identification of its number as 1–800–MATTRESS after plaintiff had promoted identification of its number as (area code)-MATTRES.*

*Id.* at 678 (emphasis added).

Despite Holiday Inns's reliance upon the *Dial–A–Mattress* decision, we find the instant case and the Second Circuit opinion clearly distinguishable. In *Dial–A–Mattress,* for example, the defendant intentionally *promoted* his vanity number and actively *caused* confusion; in our case, the defendants engaged in only minimal advertisement of their travel agency and never promoted a vanity number.

Holiday Inns also relies on *Dranoff–Perlstein Assocs. v. Sklar,* 967 F.2d 852 (3d Cir. 1992), for the proposition that telephone numbers are protectable if the mark has acquired a secondary meaning. In the present case, however, the defendants concede that Holiday Inns's vanity number, "1–800–HOLIDAY," although unregistered, is fully entitled to trademark protection. Thus, *Dranoff–Perlstein* addresses an issue not before us in this case.

The defendants, on the other hand, cite cases which suggest that the active *promotion* of a deceptively similar vanity number is necessary before the trial court can conclude that unlawful infringement has occurred. In *American Airlines, Inc. v. A 1–800–A–M–E–R–I–C–A–N Corp.,* 622 F.Supp. 673 (N.D.Ill.1985), for example, the defendant falsely advertised its airline reservation service as an airline company in the yellow

---

**6.** 800 Reservations ran a small classified ad in a statewide newspaper during the period of July 5–25, 1993. The advertisement stated: "FOR ALL YOUR HOTEL reservations needs. Call The Reservation Network at 1–800–405–4329. We rep-

resent thousands of chain properties with our online computer network. CALL NOW." After this initial "run," the advertisement was discontinued.

pages and listed its company name as "A 1-800–A–M–E–R–I–C–A–N." In finding a Lanham Act violation, the court clarified that the defendant's "wrongful conduct lies in its *misleading use* of the 'Airline Companies' yellow-pages listing *rather than its mere use of its telephone number [1–800–AMERI-CAN] . . . as such. . . .*" *Id.* at 682 (emphasis added). In other words, the court issued an injunction because the defendant's publicity efforts misled the public and not because the defendant activated a 1–800 number that appeared confusingly similar to the trademark, "American Airlines." *See also Murrin v. Midco Communications, Inc.,* 726 F.Supp. 1195, 1200–01 (D.Minn.1989) (granting a limited injunction forbidding the advertisement or use of the vanity number 1–800–LAW-YER with "dial" or with any symbols resembling dots or hyphens between the letters "LAWYERS" but explicitly rejecting the argument that *any use* of the phone number 529–9377—which spells "lawyers" on the telephone keypad—constitutes infringement upon Murrin's "Dial L.A.W.Y.E.R.S." service mark).

We conclude that although Holiday Inns owns trademark rights in its vanity number 1–800–HOLIDAY, it cannot claim such rights to the 405 number. It follows that the defendant, Call Management, is the rightful assignee of the telephone number 1–800–405–4329.

The plain language of § 32 of the Lanham Act forbids only the *"use* in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark . . . which . . . is likely *to cause* confusion." 15 U.S.C. § 1114 (emphasis added). Additionally, § 43(a) of the Act provides a cause of action only against "[a] person who . . . *uses* in commerce any word, term, name, symbol, or device . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact. . . ." 15 U.S.C. § 1125(a) (emphasis added). The defendants in this case never *used* Holiday Inns's trademark nor any facsimile of Holiday Inns's marks. Moreover,

the defendants did not *create* any confusion; the confusion already existed among the misdialing public. The defendants forward a plausible argument that the service bureau and its travel agents may have helped dispel the confusion by answering calls that would have gone unanswered and informing the customers of their error. In addition, Holiday Inns neglected to take the simple precaution of reserving its complementary number—a practice which many of its competitors have chosen to take.

Even the district court candidly admitted in its opinion that the defendants did not violate the *letter* of the Lanham Act. Holiday Inns also acknowledges that "[g]iven the creative nature of the scheming mind, the law cannot hope to spell out every forbidden act but must be content with general rules which limit competition to that which is fair and 'stop people from playing dirty tricks.'" Thus, both the district court and Holiday Inns acknowledge that the defendants never used a mark or a deceptively similar copy of a mark owned by Holiday Inns—an essential element of proof of a Lanham Act violation. Despite its failure to make this threshold showing, however, Holiday Inns still argues that a "likelihood of confusion" existed among consumers and that such probable confusion establishes the Lanham Act violation. Holiday Inns, in fact, insists that all eight factors which tend to establish the existence of a "likelihood of confusion" undermine the defendants' position in this case.[7] In particular, Holiday Inns emphasizes that the defendants *intended* to intercept calls meant for 1–800–HOLIDAY and cites *Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.,* for the proposition that the "intent of defendants in adopting [their mark] is a critical factor, since if the mark was adopted with the intent of deriving benefit from the reputation of [the plaintiff,] *that fact alone may be sufficient to justify the inference that there is confusing similarity.*" *Frisch's Restaurants, Inc.,* 670 F.2d at 648 (emphasis added) (quoting *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 263 (5th Cir.1980),

---

**7.** The district judge declined to make any findings and conclusions regarding the eight "likelihood of confusion" factors. He merely noted that "because this case is one of first impression, all previous analyses of the Lanham Act . . . provide only a starting point for determining whether defendants in this case are violating § 43(a) of the Lanham Act."

cert. denied, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980)).

Nevertheless, the defendants' use of a protected mark or their use of a misleading representation is a *prerequisite* to the finding of a Lanham Act violation. Absent such a finding, the eight-factor test of *Frisch's Restaurants, Inc.* is irrelevant. Holiday Inns does not offer, and our own research has not produced, a case in which the defendant neither *used* the offending mark nor *created* the confusion and yet was deemed to have committed a trademark infringement. We believe that stretching the plain language of the Lanham Act to cover the present dispute is unjustified. As a matter of law, therefore, we hold that Call Management, 800 Reservations, and Earthwinds Travel did not violate §§ 32 and 43 of the Lanham Act by the use of the 405 number.

### IV.

In light of the foregoing analysis, we **REVERSE** the district court's grant of partial summary judgment to Holiday Inns. We also conclude that the district court abused its discretion in granting the permanent injunction against the defendants and hereby **DISSOLVE** that injunction. Consequently, Holiday Inns is entitled to neither enhanced damages nor attorneys' fees. That portion of the judgment of the district court that comports with this conclusion is **AFFIRMED**.