The **ROCK & ROLL HALL OF FAME AND MUSEUM, INC.,** et al., Plaintiffs,

v.

**GENTILE PRODUCTIONS,** et al., Defendants.

No. 1:96 CV 899.

United States District Court, N.D. Ohio, Eastern Division.

Sept. 2, 1999.

*Memorandum of Opinion and Order*

GAUGHAN, District Judge.

### Introduction

This matter is before the Court upon defendants' Motion for Summary Judgment (Doc. 70). This is a trademark and unfair competition case arising out of a poster created by defendants from a photograph taken of a building designed by plaintiffs. For the following reasons, the Motion is GRANTED.

### Facts

Plaintiffs, The Rock and Roll Hall of Fame and Museum (hereafter, sometimes referred to individually as the Museum) and The Rock and Roll Hall of Fame Foundation (referred to collectively hereafter as plaintiffs), brought this action against defendants, Gentile Productions and Charles M. Gentile (hereafter, sometimes referred to individually as Gentile) (referred to collectively as defendants). In its Opinion vacating United States District Judge George W. White's granting of a motion for preliminary injunction in this matter, the Sixth Circuit set forth the following facts:

> In 1988, The Rock and Roll Hall of Fame Foundation registered the words, 'THE ROCK AND ROLL HALL OF FAME,' as its service mark, on the principal register at the United States Patent and Trademark Office. In 1991, the Foundation commissioned I.M. Pei, a world famous architect, to design a facility for The Rock and Roll Hall of Fame and Museum in Cleveland, Ohio. Pei's design was brought to life on the edge of Lake Erie, in the form of The Rock and Roll Hall of Fame and Museum which opened in September 1995.
>
> . . .
>
> The Museum states that its building design is 'a unique and inherently distinctive symbol of the freedom, youthful energy, rebellion and movement of rock

and roll music.' Whatever its symbolism, there can be no doubt that the Museum's design is unique and distinctive. The front of the Museum is dominated by a large, reclining, triangular facade of steel and glass, while the rear of the building, which extends out over Lake Erie, is a striking combination of interconnected and unusually shaped, white buildings. On May 3, 1996, the State of Ohio approved the registration of the Museum's building design for trademark and service-mark purposes. The Museum has similar applications pending with the United States Patent and Trademark Office.[1]

Charles Gentile is a professional photographer whose work is marketed and distributed through Gentile Productions. In the spring of 1996, Gentile began to sell, for $40 to $50, a poster featuring a photograph of the Museum against a colorful sunset. The photograph is framed by a black border. In gold lettering in the border underneath the photograph, the words, 'ROCK N' ROLL HALL OF FAME,' appear above the smaller, but elongated word, 'CLEVELAND.' Gentile's signature appears in small blue print beneath the picture of the building. Along the right-hand side of the photograph, in very fine print, is the following explanation: 'Copr.1996 Gentile Productions ... Photographed by: Charles M. Gentile[;] Design: Division Street Design [;] Paper: Mead Signature Gloss Cover 80# [;] Printing: Custom Graphics Inc. [;] Finishing: Northern Ohio Finishing, Inc.'

In reaction to Gentile's poster, [plaintiffs] filed a five-count complaint against Gentile in the district court. [Plaintiffs'] complaint contends that the Museum has used both its registered service mark, "THE ROCK AND ROLL HALL OF FAME," and its building design as trademarks, and that Gentile's poster

---

1. It appears that the United States Patent and Trademark Office approved registration of the

marks in November 1997. (pltfs.Ex. D).

infringes upon, dilutes, and unfairly competes with these marks. [Plaintiffs'] somewhat unusual claims regarding its building design, then, are quite unlike a claim to a service-mark right in a building design that might be asserted to prevent the construction of a confusingly similar building.

*The Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Productions,* 134 F.3d 749 (6th Cir.1998).

The Second Amended Complaint[2] sets forth five claims. Count One alleges federal trademark infringement, in violation of 15 U.S.C. § 1114(1). Count Two alleges unfair competition, false or misleading representations, and false designation of origin, in violation of 15 U.S.C. § 1125(a). Count Three alleges dilution of trademarks, in violation of 15 U.S.C. § 1125(c) and Ohio common law. Counts Four and Five allege unfair competition and trademark infringement under Ohio law.

Plaintiffs previously sought a preliminary injunction in this matter. Judge White granted the motion after hearing. The Sixth Circuit vacated that decision and remanded for further consideration. The case was thereafter reassigned to this Court.

This matter is now before the Court upon defendants' Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)); *see also LaPointe v. UAW, Local 600,* 8 F.3d 376, 378 (6th Cir.1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir.1995) (citation omitted); *see also United States v. Hodges X–Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox,* 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American*

---

**2.** Plaintiffs were granted leave to file a Second Amended Complaint on November 24, 1998. However, the docket does not reflect that plaintiffs ever actually filed the Second Amended Complaint. However, because defendants filed an Answer to this pleading, the Court has considered it.

*Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citation omitted).

### Discussion

The reasoning and conclusions of the Sixth Circuit will be addressed initially.

Generally, the Sixth Circuit determined that the record before it did not establish a strong likelihood of success on the merits and, therefore, vacated the preliminary injunction. The Sixth Circuit reached this conclusion because it determined that on the record before them, plaintiffs had not used their building design as a trademark.

The Sixth Circuit set forth the law relative to trademarks:

A trademark is a designation, 'any word, name, symbol, or device, or any combination thereof,' which serves 'to identify and distinguish [the] goods [of the mark's owner] ... from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.' § 15 U.S.C. 1127. Although some marks are classified as inherently distinctive and therefore capable of protection, see generally *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768–69, 112 S.Ct. 2753, 2757–58, 120 L.Ed.2d 615 (1992), it is not the case that all inherently distinctive symbols or words on a product function as trademarks. See, e.g., *Self–Realization Fellowship Church v. Ananda Church of Self–Realization,* 59 F.3d 902, 906–07 (9th Cir.1995); *Clairol Inc. v. Gillette Co.,* 389 F.2d 264, 269–71 & n. 16 (2d Cir.1968); see generally IJ. McCarthy, on Trademarks and Unfair Competition § 3:3 (4th ed.1997). Rather, in order to be protected as a valid trademark, a designation must create 'a separate and distinct commercial impression, which ... performs the trademark function of identifying the source of the merchandise to the customers.' *In re Chemical Dynamics, Inc.,* 839 F.2d 1569, 1571 (Fed.Cir.1988); see also IJ. McCarthy § 3:3.

It is well established that '[t]here is no such thing as property in a trademark except as a right appurtenant to an established business or trade in connection with which the mark is employed.' *United Drug Co. v. Theodore Rectanus Co.,* 248 U.S. 90, 97, 39 S.Ct. 48, 50–51, 63 L.Ed. 141 (1918). Thus, whether alleging infringement of a registered trademark, pursuant to § 15 U.S.C. 1114(1), or infringement of an unregistered trademark, pursuant to § 15 U.S.C. 1125(a)(1), it is clear that a plaintiff must show that it has actually used the designation at issue as a trademark, and that the defendant has also used the same or a similar designation as a trademark. See, e.g., *Holiday Inns, Inc. v. 800 Reservation, Inc.,* 86 F.3d 619, 622–23 (6th Cir.1996), cert. denied, 519 U.S. 1093, 117 S.Ct. 770, 136 L.Ed.2d 715 (1997); *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.,* 931 F.2d 1100, 1105 (6th Cir.1991). In other words, the plaintiff must establish a likelihood that the defendant's designation will be confused with the plaintiff's trademark, such that consumers are mistakenly led to believe that the defendant's goods are produced or sponsored by the plaintiff. See, e.g., *Holiday Inns,* 86 F.3d at 623.... [T]rademark claims under Ohio law follow the same analysis. See *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.,* 109 F.3d 275, 288 (6th Cir.1997).

*Rock and Roll,* 134 F.3d at 753–754.

The Sixth Circuit concluded that on the record before it, plaintiffs did not establish

a strong likelihood that defendants had made an infringing trademark use of plaintiffs' name or building design. The court stated that it was not persuaded that plaintiffs use their building as a trademark nor that the photograph in defendants' poster functions as a trademark. The court determined that when it views the photograph in defendants' poster it does not readily recognize the design of the plaintiffs' building as an indicator of source or sponsorship. Rather, the court stated that it sees a photograph of a well-known public landmark. In other words, the court saw the building not as a mark but as the good itself.

In granting the preliminary injunction, the district court had found that the plaintiffs' building design is fanciful, the plaintiffs have used their building design as a trademark and the public recognizes the plaintiffs' building design as a trademark. The Sixth Circuit disagreed finding no evidence in support.

First, the court stated, "Although the plaintiffs 'invented' the Museum, the Museum's existence as a landmark in downtown Cleveland undermines its 'fancifulness' as a trademark" and "a picture of the Museum on a product might be more readily perceived as ornamentation than as an identifier of source." *Rock and Roll*, 134 F.3d at 754.

Second, the court stated that it could not conclude on the record that plaintiffs have used their building design as a trademark because it found that plaintiffs have used it in an inconsistent manner as evidenced by the various depictions of the building design on T-shirts, posters and postcards. On some products the building is shown from the rear, on some from the front and others show a close-up view. The court concluded that plaintiffs have not "create[d] a consistent and distinct commercial impression as an indicator of a single source of origin or sponsorship." There-

fore, it was not "likely that the Museum has established a valid trademark in every photograph which, like Gentile's, prominently displays the front of the Museum's building, 'no matter how dissimilar' " because "[c]onsistent and repetitive use of a designation as an indicator of source is the hallmark of a trademark." *Id.* at 755.

Third, the court found "no support for the [district court's] factual finding that the public recognizes the [plaintiffs'] building design, in any form, let alone in all forms, as a trademark" *Id.* The court stated that evidence documenting or demonstrating such public recognition "might be pivotal" but is lacking. *Id.* at 754.

Aside from its conclusions regarding the use of the building design, the Sixth Circuit found that the district court failed to separately address defendants' use of the words, "Rock N' Roll Hall of Fame—Cleveland." Nevertheless, the Sixth Circuit noted that defendants' use of these words "may very well constitute a fair use of the [plaintiffs'] registered service mark" under the federal trademark statute as the words would merely be a description of defendants' own good if the plaintiffs failed to prove that defendants' photograph was an infringing use of the plaintiffs' building design.. *Id.* at 756.

The court concluded, "on the record before us, we are left with grave doubts as to the likelihood of the Museum's success on these claims." *Id.* at 756. A dissent was filed in the case wherein that judge found that the plaintiffs do have a valid trademark in the building.

In the Motion for Summary Judgment, defendants make three arguments: the plaintiffs have not used the photographic image of their building as a trademark, identifying source or sponsorship; defendants have not used their photograph of the building or the words "Rock and Roll Hall of Fame"[3] as a trademark; and de-

---

**3.** The actual words used on defendants' poster are, "Rock N' Roll Hall of Fame–Cleveland."

fendants' work is artistic expression protected by the First Amendment.

### (1) whether plaintiffs have used the photographic image as a trademark.

Defendants first argue that the plaintiffs have not used the photographic image of their building as a trademark, identifying source or sponsorship. Rather, defendants assert that the building is the "good itself," not a symbol for plaintiffs' product and, therefore, the photographic image of the building is the good and not the identifier of the producer of the product. While defendants agree that a building design can be trademarked, they maintain that the protection sought is actually the prevention of another constructing a similar building, such as a Fotomat or White Castle building, wherein the owner has used the building as a symbol for its product and the building itself is not the product.

Plaintiffs make several arguments in support of their allegation that they have used the building design as a trademark. However, these arguments were presented to the Sixth Circuit in plaintiffs' appeal brief and/or in their Petition seeking rehearing and were rejected inasmuch as that court did not find that the plaintiffs used their building design as a trademark.

Plaintiffs first assert that, *as a matter of law*, the Museum has "used" the building as a trademark. Plaintiffs argue that registration is prima facie evidence of use which defendants must rebut. Plaintiffs point to their trademark and service mark applications filed with the United States Patent and Trademark Office and the approved Statements of Use as clear evidence that they have used the building design as a trademark and service mark. (pltfs. Exs. C and I) Plaintiffs also point out that under the Lanham Act [4], a mark is deemed "in use" when "it is placed in any manner on the goods ... or on tags or labels ... and the goods are sold or transported in commerce" and a service mark is deemed "in use" when "it is used or displayed in the sale or advertising of services ... rendered in commerce." 15 U.S.C. § 1127. Plaintiffs submit the affidavit of Catherine Surratt, who avers that plaintiffs have used the building design on posters, postcards, snowdomes, magnets, coffee mugs and clothing among other goods and their Statement of Use showing that the building design has been used on brochures, advertisements and promotional materials. (pltfs. Exs. B and I).

These assertions have been rejected by the Sixth Circuit. In their brief on appeal, plaintiffs argued that registration of the mark is prima facie evidence of the validity, ownership and exclusive right to use the mark which defendants must rebut. (brief at 12). Plaintiffs also argued in their Petition for rehearing, as they argue here, that they have met the statutory use requirements of the federal trademark statute, the Lanham Act. (Petition at 8). While plaintiffs now submit the affidavit of Catherine Surrat averring to the use of the building design on various goods sold by plaintiffs, plaintiffs had pointed out in the Petition for rehearing that the Secretary of State "had the opportunity to view how the Museum building design was used on postcards, t-shirts, snow domes and posters before granting the certificate of registration." (Petition at 9). Therefore, the court had these arguments supporting "use" before it and apparently did not think them sufficient.

Second, plaintiffs argue that trademark law does not distinguish between shape and word marks. Plaintiffs argue that building designs are protectable trademarks, not exempted by the Lanham Act and that they can function as both trademarks and service marks. Plaintiffs assert they use the building design as trademark to distinguish their official goods from those sold by others and as a service mark on brochures and advertising to attract customers to purchase the "services"

4. The federal trademark law, 15 U.S.C. §§ 1051, *et seq.*

of the Museum. Additionally, plaintiffs assert, case law reveals the shapes, sounds, scents and colors can be trademarks. As such, the good is not the building itself but is a source identifier in that consumers purchasing defendants' poster wish to purchase a representation of the Museum's trademark, a uniquely-designed building shape.

Plaintiffs argued in their appellate brief that building designs are protectable trademarks. (brief at 13). In their Petition for rehearing, plaintiffs argued that a building design can serve as a trademark and service mark in addition to arguing that shapes, sounds, scents and colors can be trademarks. (Petition at 11–12). Further, in their Petition, plaintiffs vigorously disputed the majority's finding that the building shape in the defendants' poster was the good itself. (Petition at 12–13). Again, these arguments were rejected by the Sixth Circuit.

Next, plaintiffs argue, relying on *Coca–Cola Co. v. Gemini Rising, Inc.* 346 F.Supp. 1183 (E.D.N.Y.1972), that there can be trademark infringement with a photograph depicting another's trademark and that the two-dimensional nature of the photograph of the building design is irrelevant. Plaintiffs assert that they attach a hangtag to most of their merchandise featuring a photograph of the building to denote that the goods are officially sponsored or licensed Museum merchandise. (Ex. 2 to Surratt aff.).

Plaintiffs argued in their appellate brief, relying on *Coca–Cola*, that there can be trademark infringement with a photograph depicting another's trademark. (brief at 17). Plaintiffs also argued therein that the two-dimensional nature of the photograph of the building design is irrelevant. (*Id.* at 17–18). These arguments were not accepted by the Sixth Circuit.

Finally, plaintiffs argue that the fact the building is capable of being viewed from more than one perspective is irrelevant to whether it can function as a source identifier and that a unique building shape can have multiple depictions and, therefore, multiple perspectives of the same trademark. Plaintiffs argue that the building design is unique and distinctive and so secondary meaning [5] is not required and aesthetic functionality is irrelevant.

Plaintiffs argued in their Petition that the alleged inconsistency of building views is irrelevant. (Petition at 10–11). They also argued in their appellate brief that their marks are unique and distinctive and so automatically protected without proof of secondary meaning. (brief at 11–12). In their Petition, plaintiffs attacked the majority's findings in this regard. (Petition at 4–5). Again, the Sixth Circuit did not accept these arguments.

The only arguments which were not before the Sixth Circuit are those related to a survey now submitted by plaintiffs. Plaintiffs assert that the survey shows that the public recognizes the building design as being an identifier of the plaintiffs' goods and services. However, for the following reasons, the Court does not find that plaintiffs' survey shows public recognition of the plaintiffs' building design *as a trademark*, as opposed to recognition of the building as the Rock and Roll Hall of Fame.

Carl Block, president and CEO of the marketing research firm which conducted plaintiffs' survey, avers that the research was made up of two surveys, the Poster Identification Survey and the Poster Recognition Survey, the latter being a control measure. (aff. Carl Block; pltfs. Ex. A). The surveys were conducted in Cleveland during two months in 1998 at Tower City in downtown Cleveland and The Great Lakes Mall in suburban Cleveland. Inter-

---

**5.** To establish secondary meaning, a plaintiff must show that, "in the minds of the public, the primary significance of a product feature ... is to identify the source of the product rather than the product itself." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 112 S.Ct. 2753, 2756, 120 L.Ed.2d 615 (1992).

views of 405 people were completed with the respondents being at least 15 years of age and either having purchased within the last 12 months, or expecting to purchase within the next 12 months, a commemorative item from an attraction visited or paper poster or print of some kind. (Block aff.).

The Poster Identification Survey posed the following questions: (1) Who do you think put out [defendants'] poster? 46% said the Rock and Roll Hall of Fame. (2) Do you think that the company or person that put out [defendants'] poster needed permission or authorization from anyone? 72% said yes. (3) From whom do you believe that they would need permission or authorization? 78 % said the Rock and Roll Hall of Fame. (4) Do you believe that these two posters [plaintiffs' and defendants'] were put out by the same party, two different but related parties, or two independent parties? 37% said the same party, 23% said different but related parties and 37% said two independent parties. (5) Why do you say that? (pltfs.Ex. A)

The control, or Poster Recognition Survey, posed the following questions: (1) Do you recognize the subject of this poster [defendants' poster with the name covered]? 95% answered yes. (2) What is the subject of this poster [defendants' poster with the name covered]? 99% answered the Rock and Roll Hall of Fame. (3) If you were to buy this poster [defendants' poster with the name covered] what would be your reason? (4) Do you think that the company or person that put out this poster [defendants' poster with the name covered] needed permission or authorization from anyone? 74% answered yes. (5) From whom do you believe that they would need permission or authorization? 87% answered the Rock and Roll Hall of Fame. (Id.).

Respondents were also shown a poster of the Cleveland skyline and asked the same five control questions. (Id.).

Plaintiffs point to several cases in support of their survey in which they assert that courts relied on surveys in deciding issues such as source and sponsorship and likelihood of confusion. However, in these cases the marks at issue were first found to be *entitled to protection* and so the courts used the survey evidence to determine whether there was a likelihood of confusion. See *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526 (5th Cir.1998) (court found certain of the plaintiffs' golf holes to be entitled to protection and so proceeded to whether there was a likelihood of confusion), *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club*, 34 F.3d 410 (7th Cir.1994) (the validity of "Indianapolis Colts" as a trademark was not in question and, therefore, whether defendant infringed depended on whether defendant's mark was confusingly similar), *Ferrari S.P.A. Esercizio v. Roberts*, 944 F.2d 1235 (6th Cir.1991) (while survey was used to show secondary meaning as well as likelihood of confusion, plaintiff's automobile designs were found to have acquired secondary meaning and thus entitled to protection due also to separate testimony as well as defendant's intentional copying and the widespread publicity surrounding plaintiff's design) and *Express, Inc. v. Sears, Roebuck*, 840 F.Supp. 502 (S.D.Ohio 1993) (it was not disputed that plaintiffs had a mark in the term "EXPRESS" although it was argued that plaintiff had abandoned the mark).

■ Here, plaintiffs have not shown that their building design is protectable as a trademark. To prove trademark infringement, a plaintiff must show both that it has a valid, protectable trademark and that defendant's use of the mark creates a likelihood of confusion concerning the origins of the goods. *Express Services, Inc. v. Careers Express Staffing*, 176 F.3d 183, 185 (3d Cir.1999), *Petro Stopping Centers v. James River Petroleum*, 130 F.3d 88, 91 (4th Cir.1997) and *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111 (7th Cir.1997). Therefore, a court does not reach the issue of confusion until it finds a valid protectable mark. The sur-

vey evidence in the cases relied upon by plaintiffs goes largely to whether there was confusion.

Assuming the survey is offered to establish that plaintiffs have a protectable trademark, it only shows that, overwhelmingly, respondents recognized the building as a landmark and not as a *protected trademark* or as source-distinguishing. The Sixth Circuit anticipated this conundrum:

> Even if we accept that consumers recognize the various drawings and pictures of the Museum's building design as being drawings and pictures of the Museum, the Museum's argument would still fall short. Such recognition is not the equivalent of the recognition that these various drawings or photographs indicate a single source of the goods on which they appear.

*Rock and Roll,* 134 F.3d at 755.

■ Therefore, the Court finds that plaintiffs have not used the building design as a trademark. First, this Court will not circumvent the finding of the Sixth Circuit which concluded twice that the legal arguments made here are insufficient to show that plaintiffs used the building design as a trademark. In their Petition to the Sixth Circuit for a rehearing, plaintiffs vigorously contested that court's finding that plaintiffs did not use the building design as a trademark or service mark. (Petition at 7–11 attached to defts. reply). The Petition for rehearing was denied as "the issues raised in the petition were fully considered upon the original submission and decision of the case." (*Id.*). Even without this precedent, this Court would agree with the majority opinion. Second, the Court does not find that the survey shows a protectable trademark.

For the foregoing reasons, plaintiffs have not shown that they have used the photographic image as a trademark.

**(2) whether defendants have used plaintiffs' building design or words as a trademark.**

■ Defendants assert that they have not used the building design as a trademark and their photograph of the Museum contains its own source of origin, i.e., Gentile's signature. Plaintiffs assert that defendants' use of the building design amounts to infringement.

The Sixth Circuit did not analyze whether defendants used the building design as a trademark. *Rock and Roll,* 134 F.3d at 755. Having found that the plaintiffs do not have a protectable trademark in the building design, this Court need not reach this issue.

Even assuming there is a protectable trademark, plaintiffs arguments that defendants used the building design with an intent to deceive the public are not persuasive.

Plaintiffs assert that Gentile took his photograph in August or September 1995, but did not begin selling the poster until March 1997, after the Museum had received widespread publicity and extensive promotion (pltfs. Ex. M at 18; Rachel Schmelzer aff., pltfs. Ex. H). However, the evidence shows that Gentile began selling his poster in March 1996. (Schmelzer aff.) Therefore a photograph taken in the fall of the previous year and sold in the spring is not so unusual as to raise conjecture that defendants waited for the Museum to be publicized.

Plaintiffs assert that Gentile was informed that he would need a license from plaintiffs because they own a trademark in the building shape but he sold his posters regardless (Rachel Schmelzer aff). However, this could just as easily show that Gentile did not think his poster featuring the photograph infringed on plaintiffs' rights.

Plaintiffs assert that Gentile's other posters are merely labeled, "Cleveland," and yet, on the allegedly infringing poster, defendants use plaintiffs' words (pltfs.Ex. N). This argument is not persuasive. One poster shows a lighted bridge across

the river with boats in the foreground and other structures in the background and is labeled, "Cleveland—Parade of Lights." Another poster shows a darkened city with buildings lit up and is labeled, "Cleveland—City of Lights." A third poster shows a daytime photograph of the Cleveland skyline consisting of the British Petroleum Building, the Terminal Tower and the Key Tower with other various smaller buildings and is labeled, appropriately, "Cleveland." (pltfs.Ex. N). By contrast, the poster at issue here features one building and there is nothing inconsistent with Gentile labeling the Museum for what it is and telling the geographic location, as in the other posters, Cleveland.

Finally, plaintiffs assert that Gentile's signature appears on the poster in dark blue so as not to "stand out" (James O'Connor depo. at 17–18, pltfs. Ex.) and that the other credits on the poster are in small print likely to be covered by a frame. However, all of Gentile's posters contain his signature and the one on the poster at issue is no less conspicuous than the others. (pltfs. Ex. F and N.) Further, the deposition testimony of James O'Connor, presumably Gentile's layout designer, shows that while Gentile wanted his signature in white, O'Connor suggested it be in blue so as not to stand out or be distracting. (depo. at 17–18). This does not show any bad intent on Gentile's part. Plaintiffs assertion that the other credits are in small print and likely to be covered by a frame is not enough to show intent to confuse the public.

Additionally, plaintiffs argue that notwithstanding that the plaintiffs' logo does not appear on the poster, the survey shows that the majority of respondents still believed that the two posters were put out by the same or related parties and, therefore, there is a likelihood of confusion. Plaintiffs also assert there is actual confusion and point to the deposition testimony of Joan Stanley, plaintiffs' licensing agent, who testifies that she had received "one or two calls" asking for Gentile's poster, thinking it was put out by plaintiffs. (pltfs. Ex. L at 204, 207–208).

Nevertheless, as discussed above, the Court does not find that the survey shows that consumers believed the building is a trademark used by defendants. Further, the Court does not find Stanley's deposition showing that two people called looking for Gentile's poster to be sufficient to show actual confusion.

For these reasons, there is no evidence that defendants' used plaintiffs' building design as a trademark.

Defendants also contend that their use of the words "Rock N' Roll Hall of Fame—Cleveland" does not constitute a trademark infringement on plaintiffs' mark and is a "fair use" under the Lanham Act. Plaintiffs argue that defendants' use of the word mark is not "fair use" because the infringer has caused a likelihood of confusion and has not used plaintiffs' mark truthfully to describe or compare their product to the plaintiffs' product.

■ Having found that defendants' use of the building design was noninfringing, this Court finds that defendants' use of the words was a "fair use" of the service mark. The federal trademark statute provides a defense to an infringement charge by reason:

> That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark … of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party …

15 U.S.C. § 1115(b)(4). Thus, use of the mark is allowed where it describes the goods. This is all Gentile does when he labels his poster, "Rock N' Roll Hall of Fame—Cleveland."

For there reasons, the Court does not find defendants' use of the words "Rock N' Roll Hall of Fame—Cleveland" to infringe plaintiffs' mark.

**(3) whether defendants' work is ultimately protected by the First Amendment**

Defendants assert that their photograph "is fully protected by the First Amendment and may not be the basis for a claim under the Lanham Act, or any of the other causes of action." (Motion at 21).

The Court will not reach this issue having found that defendants prevail on the infringement issue. Moreover, while defendants argued at length on appeal that the district court's decision violated plaintiffs' First Amendment rights, the Sixth Circuit did not address these arguments. Rather, the court analyzed the claim purely under federal trademark law. This Court has done likewise.

### Conclusion

For the foregoing reasons, defendants' Motion for Summary Judgment is granted.

IT IS SO ORDERED.