Jeffrey CHAIN, L.P., d/b/a Jeffrey Chain Corporation, Plaintiff/Appellee,

v.

TROPODYNE CORPORATION, Defendant/Appellant.

No. 02–5057.

United States Court of Appeals, Sixth Circuit.

March 31, 2004.

Stephen G. Anderson, Baker, Donelson, Bearman & Caldwell, Knoxville, TN, for Plaintiff–Appellee.

Tony R. Dalton, Chad D. Emerson, Woolf, McClane, Bright, Allen & Carpenter, Knoxville, TN, for Defendant–Appellant.

Before BATCHELDER and ROGERS, Circuit Judges; and BELL, District Judge.*

---

\* The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

1. We have issued two prior opinions in this case, *Jeffrey Chain, L.P. v. Tropodyne Corp.* (*"Jeffrey Chain I"*), Nos. 99–6268, 99–6269, 2000 WL 1888719 at \*2 (6th Cir. Dec.20, 2000) (*per curiam*), and *Jeffrey Chain v. Tropodyne Corp.* (*"Jeffrey Chain II"*), No. 98–6685, 2000 WL 712379 (6th Cir. May 23, 2000) (*per curiam*).

2. The Asset Purchase Agreement provides in pertinent part:

BELL, District Judge.

Tropodyne Corporation ("Tropodyne") appeals the district court's order granting Jeffrey Chain, L.P. ("Jeffrey Chain") summary judgment on Tropodyne's counterclaim for trademark infringement and unfair competition. Tropodyne contends that the district court erred in its determination that Jeffrey Chain was entitled to use the name "Jeffrey Chain" in the sale of plastic chain without regard to evidence that such use was causing confusion in the marketplace. We affirm the district court's judgment for the reasons that follow.

## I.

This court is well acquainted with the facts of this case.[1] We accordingly draw on those opinions for the facts relevant to the counterclaim currently before us. The Jeffrey Division of Dresser Industries, Inc. ("Dresser") manufactured engineering grade chain. Dresser had a trademark in the marks "Jeffrey" and "J." In 1985 Dresser sold the Jeffrey Division to Jeffrey Chain. Pursuant to the Asset Purchase Agreement Jeffrey Chain acquired the right to use the name "Jeffrey Chain" as its corporate name.[2] The Licensing Agreement granted Jeffrey Chain an unlimited right to use the mark "Jeffrey" when coupled with the word "Chain" in its corporate or business name, and the exclu-

Use of Jeffrey Name. Seller will license Buyer to use the name Jeffrey Chain in connection with the sale of chain products. Buyer shall not be entitled to use the name "Dresser" or any name implying that Buyer is associated with Dresser, or to use the name "Jeffrey" except when immediately followed by "Chain," as in Jeffrey Chain.... The use of the Jeffrey name and trademark is the subject of a license agreement ... a copy of which is attached as Exhibit D hereto.

(Asset Purchase Agreement, ¶ 14).

sive right to use the "Jeffrey" and "J" marks in the sale of non-plastic sewage chains when associated with the word "Chain." [3]

After selling the Jeffrey Division to Jeffrey Chain, Dresser continued to manufacture and sell plastic chain under the "Jeffrey Thermoplastic Link Sludge Collector Component" product line. In 1992 Dresser spunoff its plastic sewage chain division to Indresco, Inc. As part of the spinoff, Dresser assigned to Indresco its interest in the "Jeffrey" and "J" trademarks. In 1993 Jeffrey Chain registered the trademark "Jeffrey Chain" for engineering class chain, which includes all types of metallic and plastic chain at issue in this case. The same year Jeffrey Chain began selling plastic wastewater chain under the name "Jeffrey Chain." In 1995 Tropodyne acquired Indresco's plastic sewer chain line and Indresco's rights to use the "Jeffrey" and "J" trademarks.

In 1996 Jeffrey Chain filed suit against Tropodyne alleging trademark infringement and unfair competition in connection with Tropodyne's use of the "Jeffrey" mark in the sale of metallic sewage chain. In response, Tropodyne filed a counterclaim against Jeffrey Chain alleging trademark infringement and unfair competition in connection with Jeffrey Chain's use of the mark "Jeffrey" in the sale of plastic sewage chain. After several proceedings in the district and appellate courts, Jeffrey Chain's claims against Tropodyne have been disposed of as a matter of law. On December 12, 2001, the district court dismissed the last remaining issue in the case when it entered summary judgment in favor of Jeffrey Chain on Tropodyne's counterclaim. The district court determined that pursuant to our May 23, 2000, opinion, Jeffrey Chain could not be prohibited from using its corporate name in the sale of plastic chain. Because there was no evidence of any unauthorized use of the marks, the district court determined that Tropodyne's claims failed as a matter of law and any evidence of confusion was irrelevant. Tropodyne filed this appeal.

## II.

We review *de novo* a district court's decision to grant summary judgment, applying the same Rule 56(c) standards used by the district court. *Bell v. Ohio State Univ.*, 351 F.3d 240, 246–47 (6th Cir.2003). Summary judgment is appropriate under Rule 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In conducting this review we view the evidence, all facts, and any inferences that may be drawn

---

**3.** The License Agreement provides in pertinent part:

A. LICENSOR grants to LICENSEE the right to use the mark "Jeffrey," but only when coupled with the word "Chain," in its corporate or business name.

B. LICENSOR hereby grants to LICENSEE the sole, perpetual, and exclusive right and license to manufacture, use, and sell metallic and non-metallic chains and parts and components thereof, other than plastic chains and chain parts and components to be used in the sewage industry, throughout the world under the trademarks "Jeffrey" and/or "J" as hereinabove described (herein, the LICENSED MARKS"), subject; however, to the following:

(i) LICENSEE may use the LICENSED MARKS only when the LICENSED MARKS are associated with the word "Chain" . . .

C. LICENSOR also expressly reserves the sole and exclusive ownership of the trademarks "Jeffrey" and "J" and LICENSEE agrees not to use the same except as specifically provided herein.

(License Agreement).

from the facts in the light most favorable to the nonmoving party. *Bell,* 351 F.3d at 247 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## III.

On appeal Tropodyne contends that the district court erred in failing to consider whether Jeffrey Chain's use of the "Jeffrey" trademark in the plastic wastewater chain industry is likely to cause confusion so as to constitute trademark infringement and unfair competition by Jeffrey Chain against Tropodyne. Tropodyne contends that a "likelihood of confusion" analysis was mandated by this Court's May 23, 2000, opinion, and that the district court accordingly erred when it entered summary judgment without first undertaking the confusion analysis set forth in *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.,* 670 F.2d 642, 648 (6th Cir.1982).

In our May 23, 2000, opinion, we vacated the district court's entry of a permanent injunction against Jeffrey Chain's use of its corporate name in the sale of plastic sewage chain. *Jeffrey Chain I,* 2000 WL 712379 at *1. We reasoned that both the Asset Purchase Agreement and the License Agreement specifically grant Jeffrey Chain the right to use "Jeffrey Chain" as its corporate name and that neither of these instruments place any restrictions on the type of business in which Jeffrey Chain may engage. *Id.* at *4. We then considered whether the breadth of the permanent injunction was warranted by the district court's conclusion that a likelihood of confusion would result from Jeffrey Chain's use of its corporate name in marketing plastic chain. We concluded that

the district court had improperly assumed confusion without a consideration of the *Frisch's* factors. We accordingly vacated the permanent injunction and remanded for proceedings consistent with the opinion. *Jeffrey Chain I,* 2000 WL 712379 at *4–5.

As the district court aptly noted, our May 23, 2000, opinion was not the model of clarity. This becomes particularly apparent when we attempt to square that opinion with the case in its current posture. The arguments currently being raised are not the same as the arguments presented in *Jeffrey Chain I.*[4] The permanent injunction that was before this court on interlocutory appeal in *Jeffrey Chain I* prohibited Jeffrey Chain from using the word "Jeffrey," alone or in combination with other words, in connection with its sale of plastic chain. Given the wording of the injunction, it appeared that there was a question of fact as to whether Jeffrey Chain was selling its plastic chain under the name "Jeffrey," unaccompanied by the word "Chain." Subsequent to our May 23, 2000, opinion it has become abundantly clear that Jeffrey Chain is only selling its plastic chain using its corporate name. In response to Jeffrey Chain's motion for summary judgment, Tropodyne was unable to come forward with any evidence that Jeffrey Chain had used the trademark "Jeffrey" in an unauthorized manner.

Had Jeffrey Chain been using the word "Jeffrey" alone to market its plastic chain, such a use of the trademark "Jeffrey" would have been unauthorized and would have called for a likelihood of confusion analysis. It is the elimination of a question of fact as to Jeffrey Chain's unauthorized use of the trademark "Jeffrey" that

---

**4.** In *Jeffrey Chain I* it was Jeffrey Chain that was arguing for a likelihood of confusion analysis rather than Tropodyne.

extinguishes the need for a "likelihood of confusion" analysis. As we noted in *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185 (6th Cir.1997), "[t]he Lanham Act [15 U.S.C. §§ 1051–1127] prohibits the unauthorized use of a registered trademark when selling or advertising a good or service using the trademark is likely to confuse or deceive consumers." *Id.* at 1188 (emphasis added). In order to defeat summary judgment on its counterclaim, Tropodyne was required to raise a genuine issue of fact as to

> (1) whether their use of the trademark was without the registered owner's consent, or (2) whether their unauthorized use was likely to cause confusion in the marketplace as to the origin or sponsorship of the product.

*Id.* at 1188–1189 (emphasis added) (footnotes omitted) (citing 15 U.S.C. §§ 1114(1)(a), 1125(a)). In *Bird v. Parsons*, 289 F.3d 865 (6th Cir.2002), we clarified the need for unauthorized use. We noted that "[g]enerally speaking, the key question in cases where a plaintiff alleges trademark infringement and unfair competition is whether the defendant's actions create a likelihood of confusion as to the origin of the parties' goods or services." *Id.* at 877 (citing *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir.1997)). However, where the allegations arise out of the defendant's alleged use of the plaintiff's trademark rather than out of any other actions that might have misled the public, the plaintiff's claims of trademark infringement and unfair competition "fail unless the defendants actually used [the plaintiff's] trademark in a prohibited manner." *Id.* at 877 (citing *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 626 (6th Cir.1996)).

Tropodyne's counterclaim against Jeffrey Chain rests on Jeffrey Chain's use of the mark "Jeffrey" in the sale of plastic chain. As we previously held in our opinion of May 23, 2000, Dresser granted Jeffrey Chain the right to use the mark "Jeffrey" together with the word "Chain" as its corporate name without restrictions on the nature of the businesses into which it might enter. Although Dresser only granted Jeffrey Chain an exclusive right to use the mark in its non-plastic chain business, it did not prohibit Jeffrey Chain from entering the field of plastic chain. Jeffrey Chain was accordingly authorized to use its corporate name in conjunction with its sale of plastic chain. There simply is no evidence in this case that Jeffrey Chain used Tropodyne's trademark in a prohibited manner. The district court properly concluded that because Tropodyne presented no evidence that Jeffrey Chain made any unauthorized use of the trademark "Jeffrey," there was no trademark infringement as a matter of law and there was no need to consider the issue of confusion.

## IV.

For the reasons stated herein, the district court's December 12, 2001, order granting Jeffrey Chain summary judgment on Tropodyne's counterclaim is AFFIRMED.