Beth CLINE, Plaintiff,

v.

1–888–PLUMBING GROUP, INC, Frank Campisi, and Bruni and Campisi Plumbing and Heating, Inc., Defendants.

No. 99 CIV 1401 RJW.

United States District Court, S.D. New York.

May 25, 2001.

Victor M. Serby, Esq. (Victor M. Serby, of counsel), New York City, for Plaintiff.

Reed Smith LLP (Kurt D. Olender, of counsel), Newark, NJ, for Defendants.

## OPINION

WARD, District Judge.

Plaintiff Beth Cline cross-moves for summary judgment pursuant to Rule 56, Fed.R.Civ.P. Defendants 1–888–PLUMB-ING Group, Inc. ("Plumbing Group"), Frank Campisi, and Bruni & Campisi Plumbing and Heating, Inc. ("BCPHI") cross-move to amend their pleadings pur-

suant to Rule 15(b), Fed.R.Civ.P., and for summary judgment. For the following reasons, Plaintiff's cross-motion is denied and Defendants' cross-motion is granted in part and denied in part.

## BACKGROUND

The Amended Complaint alleges that Defendants infringed on Plaintiff's registered service mark "1–800–PLUMBING" in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); diluted her allegedly famous mark in violation of the Federal Trademark Dilution Act of 1995 ("FTDA"), 15 U.S.C. § 1125(c); committed cyberpiracy in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d); caused a likelihood of injury to her business reputation and dilution of her allegedly distinctive mark in violation of New York General Business Law ("N.Y.Gen.Bus.Law") § 360 et seq.; and performed deceptive acts and practices in violation of N.Y. Gen. Bus. Law §§ 133 and 349 et seq.[1] The claims arise out of Defendants' alleged use of the toll-free telephone number "1–888–PLUMB-ING," and the registration and alleged use of eight internet domain names: www.1–800–plumbing.com, www.800–plumbing.com, www.800plumbing.com, www.888–plumbing.com, www.888plumbing.com, www.1–888–plumbing.com, www.tripleeightplumbing.com, and www.triple8plumbing.com.

Plaintiff began her plumbing business in 1991 in Maryland where she is a licensed Master Plumber–Gas Fitter. Her business was, and has remained, a sole proprietorship with no employees. In addition to Maryland, Plaintiff performs plumbing services in various locations including Cali-

---

1. In her Amended Complaint, Plaintiff did not assert a claim of unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Thus, the Court will not address her § 43(a) claim that appeared, for the first time, in her memorandum in support of her summary judgment motion.

fornia, the District of Columbia, Massachusetts, New York, Pennsylvania, and Virginia. The quantity of work she performed in these states is in dispute.

In February 1992, Plaintiff began using as her business telephone number, and continues to use, the toll-free telephone number 1–800–758–6246, corresponding to 1–800–PLUMBING. She filed the mark 1–800–PLUMBING with the Patent and Trademark Office ("PTO") in February 1992. Over one year later, on June 1, 1993, the PTO placed the service mark on the principal register.[2] Since 1992 Plaintiff has advertised and promoted 1–800–PLUMBING by, among other things, affixing the mark to her truck, distributing flyers and business cards at events, and advertising on local radio and in newspapers. The amount of advertising by Plaintiff in these various media is in dispute.

Campisi is the sole officer and director of Plumbing Group, a New York corporation incorporated on April 29, 1998. He is also the secretary, treasurer, and director of BCPHI, a New York corporation incorporated on October 4, 1979.

Someone placed a telephone call from Campisi's residence to 1–800–PLUMBING on November 27, 1996. The parties do not agree on who made the call or what was discussed. Ten days later, on December 7, Campisi registered in his own name the eight subject internet domain names with Network Solutions, Inc. ("Network Solutions"), a company that processes and maintains records of domain name registrations. On January 8, 1997, another telephone call was placed from Campisi's residence to 1–800–PLUMBING. Again,

the subject matter of the conversation and the identity of the caller are in dispute.

Plaintiff filed a complaint with Network Solutions in April 1997, alleging that Campisi's domain name 1–800–plumbing.com infringes on her registered service mark. Network Solutions initiated an internal proceeding pursuant to its Domain Name Dispute Policy and sent Campisi notification of the proceeding on September 3, 1998. The proceeding is "on-hold" pending resolution of this case.

On May 6 and 7, 1998 and January 12, 1999, additional telephone calls were made from Campisi's residence to 1–800–PLUMBING, the subject matter of which is again disputed. During the months of June and July 1998, Plaintiff sent and Campisi received "cease and desist" letters which included a copy of her registration certificate from the PTO.

Plumbing Group entered into a contract on August 1, 1998 with Tele–Name Communications, Inc. ("Tele–Name") for the use of the toll-free telephone number 1–888–758–6246, which corresponds to 1–888–PLUMBING. The contract listed the local telephone number of BCPHI's offices as the "Terminating Telephone Number," the number to which calls made to 1–888–PLUMBING would be routed. Initially, all calls made to 1–888–PLUMBING were routed to BCPHI's offices; at some point thereafter they were routed to Plumbing Group. The contract also permitted Tele–Name to post a web page on the internet promoting 1–888–PLUMBING for an additional fee. For a period of time Tele–Name did post such a web page on the internet. However, whether Defendants

---

**2.** Plaintiff's mark is properly a "service mark" and not a "trademark" because it relates to services rather than goods. *See* 15 U.S.C. § 1127 (defining trademark and service mark). However, in this case the Court will use the terms interchangeably. *See Lane*

*Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.,* 192 F.3d 337, 344 n. 2 (2d Cir.1999) ("[I]dentical standards generally govern trademark claims and service mark claims." (internal quotation marks omitted) (alteration in original)); *see also* 15 U.S.C. § 1053.

authorized or otherwise caused the web page to be posted is in dispute.

In November and December 1998, and in January 1999, articles appeared in two mechanical contracting industry magazines containing interviews with Campisi. In the articles Campisi described Plumbing Group's plans to market and license the toll-free number 1–888–PLUMBING. The parties dispute whether Defendants caused the articles to be printed.

## DISCUSSION

## I. Standard for Summary Judgment

Summary judgment is appropriate where the moving party has established that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to [the factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, the court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 572 (2d Cir.1993).

Initially, the moving party must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party is required to introduce evidence beyond the mere

pleadings to show that there is an issue of material fact concerning "an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

## II. Infringement Under § 32(1) of the Lanham Act

■ Plaintiff cross-moves for summary judgment, claiming that Defendants infringed upon her registered service mark 1–800–PLUMBING in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). Defendants cross-move for summary judgment, seeking dismissal of Plaintiff's § 32(1) claim and cancellation of her registered mark. Section 32(1) states:

(1) Any person who shall, without the consent of the registrant-

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1). To prevail on a Lanham Act infringement claim, the claimant must show that "it has a valid mark enti-

tled to protection and that the defendant's use of it is likely to cause confusion." *The Morningside Group Ltd. v. Morningside Capital Group, L.L.C.,* 182 F.3d 133, 137 (2d Cir.1999). Additionally, the claimant must show that the defendant "used" the mark in commerce. *See* 15 U.S.C. § 1114(1); *see also id.* § 1127 (defining "use in commerce").

## A. Validity of Plaintiff's Registered Mark

■ Plaintiff relies on her registration with the PTO for the validity of her mark. Registration with the PTO provides "prima facie evidence that the mark is registered and valid (*i.e.,* protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.,* 192 F.3d 337, 345 (2d Cir.1999); *see also* 15 U.S.C. § 1115(a). However, registration does not "preclude another person from proving any legal or equitable defense or defect ... which might have been asserted if such mark had not been registered." 15 U.S.C. § 1115(a). Defendants here assert that Plaintiff's mark 1–800–PLUMBING is invalid, arguing that it lacks the requisite distinctiveness to be afforded trademark protections, and alternatively, that Plaintiff abandoned the use of her mark.

### 1. Distinctiveness

■ The level of protection accorded to a mark is governed by the crucial trademark concept of "distinctiveness," which "places marks on a ladder reflecting their inherent strength or weakness." *Nabisco, Inc. v. PF Brands, Inc.,* 191 F.3d 208, 215 (2d Cir.1999). These levels of distinctiveness include, from most to least protected, fanciful, arbitrary, suggestive, descriptive, and generic. *See Lane Capital Management,* 192 F.3d at 344.

■ Fanciful, arbitrary, and suggestive marks are deemed inherently distinctive and thus are afforded automatic protection under the Lanham Act. *See id.* Descriptive marks are not inherently distinctive, and therefore, gain trademark protection and eligibility for registration on the PTO's principal register only after acquiring distinctiveness, or "secondary meaning." *See id.* Generic marks "are totally lacking in distinctive quality; they are not entitled to any protection against infringement, even if they have become famous as marks." *TCPIP Holding Co. v. Haar Communications, Inc.,* 244 F.3d 88, 93 (2d Cir.2001) (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 10 (2d Cir.1976)).

■ In this case, Defendants argue that Plaintiff's mark is or has become generic. The parties do not dispute that the word "PLUMBING" and the prefix "1–800" are each generic terms. The issue is whether, as a whole, the telephone number 1–800–PLUMBING is generic. "A mark is generic if it is a common description of products and refers to the genus of which the particular product is a species." *Lane Capital Management,* 192 F.3d at 344. A registered mark may be challenged at any time on the ground that it has become generic. *See, e.g., Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 202, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985); 15 U.S.C. § 1064(3).

Without explicitly addressing the issue of genericness, the Second Circuit has upheld trademark protection for a telephone number comprised solely of a generic term. In *Dial–A–Mattress Franchise Corp. v. Page,* 880 F.2d 675 (2d Cir.1989), Dial–A–Mattress had used and promoted the local telephone number "MATTRES" in its retail mattress business for over ten years. It then sought an injunction pro-

hibiting a competitor from using the toll-free number "1–800–MATTRESS." On grounds of unfair competition, the district court issued an injunction preventing the competitor's use of 1–800–MATTRESS in the New York metropolitan area. The Second Circuit upheld the injunction, finding that "[t]elephone numbers may be protected as trademarks, and a competitor's use of a confusingly similar telephone number may be enjoined as both trademark infringement and unfair competition." *Id.* at 678. While the court did not expressly address what level of distinctiveness applied, by affording trademark protection for the telephone number, the court implicitly held that it could not have been generic, as generic marks are never afforded trademark protections. *See, e.g., Abercrombie & Fitch Co.,* 537 F.2d at 9–10. Therefore, the MATTRES telephone number could only have been descriptive, suggestive, arbitrary, or fanciful.

Defendants argue that Trademark Manual of Examining Procedure ("TMEP") § 1209.01(b)(12), which was promulgated in 1994, subsequent to both the 1989 decision in *Dial–A–Mattress Franchise Corp.* and the PTO's 1993 registration of Plaintiff's mark, now renders her registered mark generic as a matter of law. That section suggests that a mark cannot be registered if it is comprised of an area code followed by an otherwise generic term. *See* TMEP § 1209.01(b)(12). However, the Court of Appeals for the Federal Circuit has recently upheld the validity of a registered mark comprised of the toll-free area code "1–888" and the generic term "MATTRESS," explicitly rejecting a lower court decision which had relied on TMEP § 1209.01(b)(12). *See In re Dial–A–Mattress Operating Corp.,* 240 F.3d

1341, 1346 (Fed.Cir.2001), *rev'g* 52 U.S.P.Q.2d 1910 (TTAB 1999).

The Federal Circuit analyzed the mark 1–888–MATTRESS not as the mechanical combination of two generic terms, but in its entirety and within the context of its use as a telephone number. *See id.* at 1345–46 (" 'The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail.' " (quoting *Estate of P.D. Beckwith, Inc. v. Commissioner of Patents,* 252 U.S. 538, 545–46, 40 S.Ct. 414, 64 L.Ed. 705 (1920))). Noting that the "telephone shop-at-home service for retail mattresses" is a generic description of a class of products, or "genus," and that the relevant public does not equate 1–888–MATTRESS with that genus, the court concluded that the mark was not generic. *See id.* Rather, the 1–888–MATTRESS mark referred to the particular service provided by plaintiff.

In this case the relevant facts are the same. The mark 1–800–PLUMBING, in its context as a telephone number, is not "a common description of products … refer[ring] to the genus of which the particular product is a species," *Lane Capital Management,* 192 F.3d at 344, and is not understood by the public to be "a class of shop-at-home telephone" plumbing services. *See In re Dial–A–Mattress Operating Corp.,* 240 F.3d at 1346. Instead, the public perceives Plaintiff's mark as identifying her particular service. Consistent with *Dial–A–Mattress Franchise Corp. v. Page,* the Court finds that Plaintiff's mark is not generic, and denies Defendants' cross-motion for summary judgment seeking dismissal of Plaintiff's § 32(1) claim on that ground.[3]

---

3. Defendants also cross-move to amend their pleadings pursuant to Rule 15(b), Fed.R.Civ.P., to add a counterclaim for cancellation of

Plaintiff's registered mark based on genericness. The motion is denied because the Court concludes that the mark is not generic, and

Having determined that Plaintiff's mark is not generic, the Court will now consider whether the mark is descriptive. A mark is descriptive if it "tells something about a product, its qualities, ingredients or characteristics. It may point to a product's intended purpose, its function or intended use, its size, or its merit." *Gruner + Jahr USA Publ'g v. Meredith Corp.,* 991 F.2d 1072, 1076 (2d Cir.1993). The Federal Circuit found 1–800–MATTRESS to be descriptive as immediately conveying the impression that a particular service relating to mattresses is available by calling the telephone number. *See In re Dial–A–Mattress Operating Corp.,* 240 F.3d at 1346. Following the same reasoning, this Court finds that 1–800–PLUMBING is descriptive as immediately conveying the impression that a particular plumbing service is available by calling the telephone number.[4]

## 2. Abandonment

Defendants seek leave to amend their pleadings to conform to the evidence pursuant to Rule 15(b), Fed.R.Civ.P., adding an affirmative defense, and a counterclaim for cancellation, based on Plaintiff's alleged abandonment of her mark 1–800–PLUMBING. Plaintiff counters that because Defendants failed to include the defense in their pleadings, the issue is waived.

Rule 15(b) provides that courts should "freely" grant leave to amend the pleadings to conform to the evidence "when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits." Fed.R.Civ.P. 15(b). The Supreme Court has interpreted Rule 15 to permit such amendments when the party seeking the amendment has not unduly delayed, the party is not acting in bad faith or with a dilatory motive, the opposing party will not be unduly prejudiced, and the amendment is not futile. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). A court may grant leave to amend to permit the assertion of an omitted affirmative defense and may at the same time consider that defense on summary judgment. *See, e.g., Continental Airlines, Inc. v. Lelakis,* 943 F.Supp. 300, 309 n. 6 (S.D.N.Y.1996).

Were this Court to deny Defendants' request to amend, Defendants would be free to file an independent action because, under the Lanham Act, a claim of aban-

---

therefore, the amendment would be futile. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (stating that leave to amend under Rule 15 may be denied where it is apparent that the amendment would be futile).

4. In their third and final memorandum of law, Defendants suggest that they are moving for summary judgment on the additional ground that Plaintiff's mark is not valid because it is descriptive and lacks secondary meaning. However, Defendants have not adequately raised this issue and the Court will not address it at this time. The Federal Rules of Civil Procedure require that every "motion ... shall state with particularity the grounds

therefor." Fed.R.Civ.P. 7(b)(1). Additionally, the supporting memorandum of law shall "set[] forth the points and authorities relied upon." Local Civ. R. 7.1. The provision of such information in the motion and accompanying memorandum of law is intended to protect the non-movant from unfair prejudice. *See* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1192, at 39–47 (2d ed.1990). Here, Defendants omitted the issue of secondary meaning from their notice of cross-motion and failed to argue the point in the accompanying memorandum of law. They thus failed to put Plaintiff on sufficient notice of the claim so that she could adequately respond.

donment may be made "[a]t any time." 15 U.S.C. § 1064(3). Additionally, since both sides have fully briefed the issue of abandonment, there is no risk that Plaintiff would be prejudiced by any "sudden assertion" of the claim. *See* 5 Charles Alan Wright & Arthur R. Miller, Federal Rules of Civil Procedure § 1278, at 501–02 (2d ed.1990). The Court has considered the other factors set forth in *Foman* and grants Defendants' cross-motion to add an affirmative defense and counterclaim for cancellation premised on Plaintiff's alleged abandonment of her mark. Because the parties have briefed the issues, the Court will also address them here on summary judgment.

■■■■ Section 45 of the Lanham Act, 15 U.S.C. § 1127, defines abandonment:

A mark shall be deemed "abandoned" if . . . the following occurs:

(1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

15 U.S.C. § 1127. Thus, the two relevant elements required to support a finding of abandonment are nonuse and intent not to resume. *See Stetson v. Howard D. Wolf & Assocs.*, 955 F.2d 847, 850 (2d Cir.1992). "[A]bandonment, being a forfeiture of a property interest, should be strictly proved . . . ." *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir.1980); *see also Pilates, Inc. v. Current Concepts, Inc.*, 120 F.Supp.2d 286, 295 (S.D.N.Y. 2000) (stating that the "defense of abandonment must be proven by clear and convincing evidence").

■■■■ Defendants allege that Plaintiff abandoned her registered mark as a result of her nonuse. They allege that her activities as a sole proprietor with no employees were at best *de minimis,* not rising to the level of a "bona fide use of a mark in the ordinary course of trade" as required under 15 U.S.C. § 1127. Plaintiff argues that she has not abandoned her mark through nonuse, relying on the fact that she has maintained the telephone number 1–800–PLUMBING continuously since 1992 and has performed plumbing services in several states under that mark. The parties do not agree, however, on the quantity of plumbing services she performed under the mark 1–800–PLUMBING. The Court finds that issues of material fact exist regarding whether Plaintiff used her mark as required by 15 U.S.C. § 1127.

■■■■ The second requirement necessary to establish abandonment is the registrant's intent not to resume. "A bare assertion of possible future use is not enough" to dispel an alleged intent not to resume. *Silverman v. CBS, Inc.*, 870 F.2d 40, 47 (2d Cir.1989); *see also Imperial Tobacco Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1581 (Fed.Cir.1990) ("In every contested abandonment case, the respondent denies an intention to abandon its mark . . . . [O]ne must, however, proffer more than conclusory testimony or affidavits."). While intent not to resume "may be inferred from circumstances," 15 U.S.C. § 1127, summary judgment is "notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles." *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1560 (2d Cir.1989). Plaintiff points to admissible evidence which establishes a genuine issue of fact regarding her intent to use (or resume use) of her registered mark. For example, Plaintiff has

promoted and continues to promote her mark "everywhere she goes," has prominently affixed the mark to her truck, and has actively sought the right to use the internet domain name www.1–800–plumbing.com. Accordingly, Defendants' cross-motion for dismissal of Plaintiff's § 32(1) claim and for cancellation of her registered mark premised on abandonment is denied.

## B. Likelihood of Confusion

■ Assuming for present purposes that Plaintiff has a valid mark, to prevail on summary judgment she must establish that Defendants' use of 1–888–PLUMBING, or of one of the eight internet domain names, is likely to be confused with her registered mark 1–800–PLUMBING. Arguing the absence of such likelihood, Defendants also cross-move for summary judgment, seeking dismissal of Plaintiff's § 32(1) claim.

■ In analyzing the likelihood of confusion, the court must determine whether "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark," *Gruner + Jahr USA,* 991 F.2d at 1077, or whether "there may be confusion as to plaintiff's sponsorship or endorsement of the junior mark." *Hormel Foods Corp. v. Jim Henson Prods., Inc.,* 73 F.3d 497, 502 (2d Cir.1996). There must be "a probability of confusion, not a mere possibility." *Gruner + Jahr USA,* 991 F.2d at 1077.

■ The Second Circuit has set forth eight non-exclusive factors that courts must consider in determining whether a likelihood of confusion exists. These factors are: 1) the strength of plaintiff's mark; 2) the similarity of plaintiff's and defendant's marks; 3) the competitive proximity of the products; 4) the likelihood that plaintiff will "bridge the gap" by entering defendant's market; 5) actual confusion between the products; 6) good faith on defendant's part; 7) the quality of defendant's product; and 8) the sophistication of buyers. *See Polaroid Corp. v. Polarad Elecs. Corp,* 287 F.2d 492, 495 (2d Cir.1961). "The *Polaroid* factors are not examined by any precise measure, but . . . are weighed only to ascertain whether there is a likelihood of confusion on the part of an appreciable segment of the purchasing public as to the source of the product." *Gruner + Jahr USA,* 991 F.2d at 1079–80. The Second Circuit has instructed that

> the *Polaroid* factors are not, of course, "exclusive" and should not be applied "mechanically." No single factor is dispositive, and cases may certainly arise where a factor is irrelevant to the facts at hand. But it is incumbent upon the district judge to engage in a deliberate review of each factor, and, if a factor is inapplicable to a case, to explain why. The steady application of *Polaroid* is critical to the proper development of trademark law, for it is only when the *Polaroid* factors are applied consistently and clearly over time that the relevant distinctions between different factual configurations can emerge.

*Arrow Fastener Co. v. The Stanley Works,* 59 F.3d 384, 400 (2d Cir.1995) (citations omitted); *see also New Kayak Pool Corp. v. R & P Pools, Inc.,* 246 F.3d 183, 185–86 (2d Cir.2001) (vacating the decision of a district judge who determined likelihood of confusion without applying the *Polaroid* test); *Thompson Med. Co. v. Pfizer Inc.,* 753 F.2d 208, 218 (2d Cir.1985) (finding that in applying only some, and not all, of the *Polaroid* factors, the district judge "radical[ly] depart[ed]" from the Second Circuit's "unwavering adherence" to the *Polaroid* principles).

Granting summary judgment based on a likelihood of confusion under the *Polaroid* analysis "is appropriate where 'the undisputed evidence would lead to only one conclusion.'" *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir.1996) (quoting *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 478 (2d Cir.1996)). "If a factual inference must be drawn to arrive at a particular finding on a *Polaroid* factor, and if a reasonable trier of fact could reach a different conclusion, the district court may not properly resolve that issue on summary judgment." *Cadbury Beverages*, 73 F.3d at 478. "The bottom line on a motion for summary judgment is not how many factors favor each side but whether a reasonable trier of fact might differ as to likelihood of confusion." *Physicians Formula Cosmetics Inc. v. West Cabot Cosmetics, Inc.*, 857 F.2d 80, 85 (2d Cir.1988).

### 1. Strength of Plaintiff's Mark

The focus under this factor is on "the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *McGregor–Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1131 (2d Cir. 1979), *overruled on other grounds, Bristol–Myers Squibb Co. v. McNeil–P.P.C.*, 973 F.2d 1033, 1043–44 (2d Cir.1992). In determining the strength of a mark, courts look to " '(1) the placement of the mark on the spectrum of marks; and (2) the marketplace recognition value of the mark.'" *Horn's, Inc. v. Sanofi Beaute, Inc.*, 963 F.Supp. 318, 322 (S.D.N.Y.1997) (quoting *Karmikel Corp. v. The May Dep't Stores Co.*, 658 F.Supp. 1361, 1369 (S.D.N.Y. 1987)).

As to the first part of this test, the Court determined, *supra*, that Plaintiff's mark 1–800–PLUMBING is merely descriptive. As to the second part of this factor, issues of material fact exist regarding the extent to which Plaintiff's mark is recognized by the consuming public.

### 2. Similarity of the Marks

Courts look to two key questions in determining similarity:

1) whether the similarity between the two marks is likely to cause confusion and 2) what effect the similarity has upon prospective purchasers. In deciding whether the marks are similar as used, [courts] do not look just at the typewritten and aural similarity of the marks, but how they are presented in the marketplace.

*The Sports Authority*, 89 F.3d at 962 (citation omitted). To determine "whether the similarity of the marks is likely to provoke confusion among prospective purchasers ... a court should look at the general impression created by the marks, taking into account all factors that potential purchasers will likely perceive and remember." *Lang v. Retirement Living Publ'g Co.*, 949 F.2d 576, 581 (2d Cir.1991).

The marks 1–800–PLUMBING and 1–888–PLUMBING are nearly identical in their written and aural compositions, and therefore, are likely to be confused in these respects. Additionally, and importantly, the marks are likely to be confused because both provide an identical service— plumbing services to consumers via a toll-free telephone call. Since the similarity of the marks is likely to have a great effect upon prospective purchasers, the Court finds that this factor weighs heavily in favor of Plaintiff. For the same reasons, the Court finds that the domain names www.1–800–plumbing.com, www.800–plumbing.com, www.800plumbing.com, www.888–plumbing.com, www.888plumbing.com, and www.1–888–plumbing.com are similar to Plaintiff's mark and that, as

to these domain names, this factor weighs heavily in favor of Plaintiff. As to the domain names www.tripleeightplumbing.com, and www.triple8plumbing.com, however, the similarities are not as pronounced, and the weight of this factor as to these domain names should be determined by a factfinder.[5]

### 3. Competitive Proximity of the Products

 This factor recognizes that the likelihood of· confusion between products and services depends in part on whether and to what extent the two products are in competition. *See Cadbury Beverages,* 73 F.3d at 480. In assessing this factor,

> [courts] look "to the nature of the products themselves and the structure of the relevant market." Among the considerations germane to the structure .of the market are the class of customers to whom the goods are sold, the manner in which the products are advertised, and the channels through which the goods are sold.

*Id.* (citation omitted). However, " 'direct competition between the products is not a prerequisite to relief,' " and "products that share the same channel of trade are not necessarily proximate." *The Sports Authority,* 89 F.3d at 963 (citations omitted).

Plaintiff's and Defendants' marks target the same consumers, through the same medium, for the same service, and are in this regard likely to be confused. On both cross-motions, therefore, this factor weighs heavily in Plaintiff's favor.

### 4. Bridging the Gap

 "Under this factor, if the owner of a trademark can show that it intends to enter the market of the alleged infringer, that showing helps establish a future likelihood of confusion as to source." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 874 (2d Cir.1986). This factor is designed to protect the trademark owner's "interest in being able to enter a related field at some future time." *Scarves by Vera, Inc. v. Todo Imports Ltd.,* 544 F.2d 1167, 1172 (2d Cir.1976). It weighs in the owner's favor if either bridging the gap is probable or if an average consumer perceives it as a probability. *See, e.g., The Sports Authority,* 89 F.3d at 963.

In the instant case this factor is not relevant. Because 1–800–PLUMBING and 1–888–PLUMBING are both marks targeting the same market, and because Plaintiff's claim is under § 32(1) of the Lanham Act which affords her registered mark nationwide protections, there is no gap to bridge. *See, e.g., Orb Factory, Ltd. v. Design Science Toys, Ltd.,* No. 96 Civ. 9469, 1999 WL 191527, at *13 (S.D.N.Y. April 7, 1999) (finding the likelihood that plaintiff will "bridge the gap" not relevant where both parties are toy manufacturers already competing in the same market). Therefore, this factor does not weigh in favor of either side.

### 5. Actual Confusion Between the Products

██ "[I]t is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." *Lois Sportswear,* 799 F.2d at 875. Nevertheless, lack of actual confusion " 'may under some circumstances be used against the plaintiff.' " *Cadbury Bev-*

---

5. The Court notes that in assessing the similarity of domain names to other marks, any lack of separating spaces, the choice of punctuation, or the addition of a domain identifier such as ".com" have "little or no significance." *TCPIP Holding,* 244 F.3d at 101.

*erages,* 73 F.3d at 482 quoting *Hasbro, Inc. v. Lanard Toys, Ltd.,* 858 F.2d 70, 78 (2d Cir.1988).

In this case, Plaintiff presented her own affidavit in which she states that she received "numerous" telephone calls from people seeking plumbing services from Defendant Plumbing Group. "[E]vidence that consumers placed phone calls to the wrong party and mistakenly believed that plaintiff's and defendant's services were affiliated because of their similar names" may be taken into account as evidence of actual confusion. *The Morningside Group Ltd. v. Morningside Capital Group, L.L.C.,* 182 F.3d 133, 141 (2d Cir. 1999). However, the number and frequency of the misdirected calls is not clear. In addition, Defendants dispute that Plaintiff received these calls. Therefore, issues of material fact exist with regard to actual confusion and this factor should be weighed by a factfinder in determining the likelihood of confusion.

### 6. Defendants' Good Faith

This factor looks to " 'whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product.' " *The Sports Authority,* 89 F.3d at 964 (quoting *Lang,* 949 F.2d at 583). " 'Prior knowledge of a senior user's trade mark does not necessarily give rise to an inference of bad faith and may be consistent with good faith.' " *Id.* (quoting *Arrow Fastener,* 59 F.3d at 397). In analyzing good faith as a *Polaroid* factor, courts have regularly held that such issues of intent are inappropriate for determination on summary judgment. *See, e.g., Cadbury Beverages,* 73 F.3d at 483; *Lang,* 949 F.2d at 583; *Chum Ltd. v. Lisowski,* No. 98 Civ. 5060, 2001 WL 243541, at *11 (S.D.N.Y. March 12, 2001).

Plaintiff argues that Defendants' bad faith can be inferred from Campisi's actions. She points out that telephone calls were placed to her toll-free number 1–800–PLUMBING from a residence owned by Campisi prior to his registration of the contested internet domain names and prior to the date Campisi incorporated Plumbing Group. Additionally, she notes that Campisi had received cease and desist letters prior to entering into the contract with Tele–Name. Lastly, she notes that Campisi did not investigate the validity of 1–888–PLUMBING by consulting an attorney, instead relying on advice from an employee of Tele–Name. While all these facts could support a finding of bad faith, they do not mandate it. A rational jury could conclude that Defendants' knowledge of the existence of Plaintiff's mark was consistent with good faith. Because factual disputes exist regarding whether Defendants intentionally sought to capitalize on Plaintiff's goodwill and cause confusion, the weight of this factor should be determined at trial.

### 7. Quality of Defendants' Product

Under this factor courts look to 1) whether defendant's products are inferior to plaintiff's, thereby tarnishing plaintiff's reputation if consumers confuse the two, or 2) whether defendant's services are of equal quality, thus creating confusion as to source because of that very similarity. *See The Morningside Group,* 182 F.3d at 142. The Court cannot address this factor here because the parties have not submitted sufficient evidence from which any conclusion can be drawn about the relative quality of Plaintiff's and Defendants' plumbing services.

### 8. Sophistication of Buyers

This final factor acknowledges that the likelihood of confusion between

the products at issue depends in part on the sophistication of the relevant purchasers. *See Arrow Fastener,* 59 F.3d at 398. Neither Plaintiff nor Defendants have provided any evidence relevant to this factor that would support a finding in their favor. Therefore, the weight of this factor in relation to a finding of likelihood of confusion is properly left to the factfinder.

### 9. Weighing the Factors

Assessing the record with regard to the *Polaroid* factors and drawing all reasonable inferences in the respective nonmovant's favor, the Court concludes that material factual disputes exist as to the likelihood of confusion, and that neither party is entitled to a judgment on this issue as a matter of law. A trial is necessary to assess and weigh each factor and establish whether there exists a likelihood of confusion. Therefore, the court denies Plaintiff's and Defendants' cross-motions for summary judgment on this issue.

### C. Use in Commerce

■ The last element Plaintiff must establish to prevail on her § 32(1) claim is that Defendants used in commerce the mark 1–888–PLUMBING or one of the eight internet domain names. Defendants cross-move for summary judgment seeking dismissal of this claim, arguing that they did not "use" a mark as required under the Lanham Act, and that even if they did, their actions are protected by the fair use doctrine.

Under § 32(1) of the Lanham Act, infringement occurs where a person "use[s] in commerce any reproduction, counterfeit, copy or colorable imitation of a *registered mark.*" 15 U.S.C. § 1114(a)(1) (emphasis added). In the context of services, the Lanham Act defines "use in commerce" as

the bona fide use of a *mark* in the ordinary course of trade, and *not merely to reserve a right in a mark.* For purposes of this chapter, a *mark* shall be deemed to be used in commerce

. . .

on services when it is *used or displayed in the sale or advertising of services and the services are rendered in commerce,* or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127 (emphasis added).

■ In the context of internet domain names, parties encroach on a registrant's rights under § 32(1) of the Lanham Act not when they reserve a domain name likely to be confused with the registered mark, but when they *use* it. *See, e.g., Planned Parenthood Fed'n of Am. Inc. v. Bucci,* 42 U.S.P.Q.2d 1430, 1436–37 (S.D.N.Y.1997), *aff'd,* 152 F.3d 920, 1998 WL 336163 (2d Cir.1998); *Hard Rock Café Int'l (USA) Inc. v. Morton,* No. 97 Civ. 9483, 1999 WL 717995, at * 24 (S.D.N.Y. Sept.9, 1999); *see also HQM, Ltd. v. Hatfield,* 71 F.Supp.2d 500, 507 (D.Md.1999) ("[N]early every Court to have decided whether mere registration or activation of a domain name constitutes 'commercial use' has rejected such arguments. . . ."); *Jews For Jesus v. Brodsky,* 993 F.Supp. 282, 307 (D.N.J.1998) ("[T]he mere registration of a domain name, without more, is not a 'commercial use' of a trademark."); *Lockheed Martin Corp. v. Network Solutions, Inc.,* 985 F.Supp. 949, 961 (C.D.Cal. 1997) ("The registration of a domain name, without more, does not amount to infringement of a mark similar to the name."); *Juno Online Services v. Juno Lighting, Inc.,* 979 F.Supp. 684, 691 (N.D.Ill.1997) ("The mere 'warehousing' of the domain

name is not enough to find that defendant placed the mark on goods or 'used or displayed [the mark] in the sale or advertising of services' as required under 15 U.S.C. § 1127." (alteration in original)); *Panavision Int'l, L.P. v. Toeppen*, 945 F.Supp. 1296, 1303 (C.D.Cal.1996) ("Registration of a trade[mark] as a domain name, without more, is not a commercial use of the trademark . . . ."). Defendants acknowledge having registered the eight internet domain names, but contend that they did not use them in commerce. Plaintiff claims that Defendants did more than merely register the domain names. She alleges that they launched and promoted a web site advertising the toll-free number 1–888–PLUMBING.

From the undisputed evidence, however, all the court can conclude is that a website advertising 1–888–PLUMBING had been posted by Tele–Name. Whether Defendants had a role in posting it is disputed. Therefore, issues of material fact exist regarding whether Defendants used the domain names in a manner constituting infringement under § 32(1) of the Lanham Act.

■ Plaintiff also argues that Defendants infringed on her mark because telephone calls made to 1–888–758–6246, corresponding to 1–888–PLUMBING, were in fact routed to the offices of BCPHI, and later, to the offices of Plumbing Group. While acknowledging that the telephone number was operational, Defendants argue that they did not "use" a mark because they did not actively promote or advertise the corresponding mnemonic.

Defendants rely on *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619 (6th Cir.1996), which, they assert, is factually similar. In that case Holiday Inns operated, advertised, and promoted their toll-free telephone number "1–800–HOLIDAY" for hotel reservations at its own hotels. De-fendant 800 Reservation offered a competing reservation service for other hotels. *See id.* at 620. Seeking to reap the benefits of Holiday Inns's marketing efforts for 1–800–HOLIDAY, 800 Reservation intentionally chose the toll-free telephone number "1–800–H[zero]LIDAY" for the "sole purpose" of intercepting calls from misdialed customers who were attempting to reach Holiday Inns. *See id.* at 621. However, 800 Reservation never advertised its toll-free number other than in its numerical form 1–800–405–4329. *See id.* at 623–24. Relying in part on the plain language of the Lanham Act, the Sixth Circuit rejected Holiday Inns's claims, finding that defendant "never *use Holiday Inns's trademark nor any facsimile of Holiday Inns's marks*" because 800 Reservation never "*used*" 1–800–H[zero]LIDAY. *Id.* at 625.

■ This Court agrees with the Sixth Circuit to the extent that merely placing into operation a toll-free telephone number, without active promotion or advertising of the corresponding mnemonic, does not constitute infringement under § 32(1) of the Lanham Act because such activity does not involve the use of a "reproduction, counterfeit, copy, or colorable imitation of a *registered mark.*" 15 U.S.C. § 1114(1) (emphasis added); *see Holiday Inns*, 86 F.3d at 625; *see also Lockheed Martin*, 985 F.Supp. at 957 ("The infringing act, however, is not the mere possession and use of a telephone number."); *U–Haul Int'l, Inc. v. Kresch*, 943 F.Supp. 802, 806 (E.D.Mich.1996) (finding no infringement of plaintiff's toll-free telephone number 1–800–GO–UHAUL under § 32(1) where defendant operated the toll-free telephone number 1–800–G[zero]UHAUL). Therefore, regarding Defendants' operation of the telephone number 1–888–758–6246, the relevant question is whether De-

fendants *promoted* it as 1–888–PLUMB-ING.

Plaintiff alleges that Defendants promoted 1–888–PLUMBING by causing articles to be published in two trade magazines for mechanical contractors. The articles contain interviews with Campisi in which he described his plans for licensing the toll-free number 1–888–PLUMBING through the Plumbing Group. From the evidence cited in the parties' respective statements of material facts, it is unclear to what extent the news articles resulted from Defendants' own efforts to promote 1–888–PLUMBING or whether they were the consequence of news reporting. Therefore, issues of material fact exist as to whether the publication of the articles constitutes "use" by Defendants. Accordingly, Plaintiff's and Defendants' cross-motions for summary judgment on the issue of whether Defendants' actions constituted "use" under the Lanham Act are denied.

Defendants also cross-move for dismissal of Plaintiff's § 32(1) claim, arguing that any actions they may have taken are protected by the doctrine of fair use. "Under this doctrine, one party's exclusive right to use a mark 'will not prevent others from using the word or image [constituting the mark] in good faith in its descriptive sense, and not as a trademark.'" *TCPIP Holding*, 244 F.3d at 103 (alteration in original) (quoting cases). The doctrine is codified in the Lanham Act: a defense to a claim of infringement under § 32(1) is a party's "use, *otherwise than as a mark*, ... of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party." 15 U.S.C. § 1115(b)(4) (emphasis added); *see, e.g., TCPIP Holding*, 244 F.3d at 104 (finding that the fair use doctrine did not protect defendant where defendant's use of "thechildrensplace.com" was use "as a mark").

In the instant case, Defendants' alleged use of the infringing terms is not as descriptions of their services, but as marks. That is, Defendants use their telephone number 1–888–PLUMBING and the eight subject domain names to identify and distinguish their services from the services of others. *See* 15 U.S.C. § 1127 (definitions of "mark" and "service mark"); *see also TCPIP Holding*, 244 F.3d at 103–04. Therefore, Defendants do not qualify for protection under the fair use doctrine, and Defendants' cross-motion for dismissal of Plaintiff's § 32(1) claim is denied to the extent that Defendants seek protection under this doctrine.

### III. Federal Trademark Dilution Act

Plaintiff cross-moves for summary judgment claiming dilution of her allegedly distinctive and famous mark. The FTDA defines the term "dilution" as:

> [T]he lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence of-
>
> (1) competition between the owner of the famous mark and other parties, or
>
> (2) likelihood of confusion, mistake, or deception.

15 U.S.C. § 1127. It provides remedies to the owner of a famous mark where that mark's distinctive quality is diluted by another's commercial use of a mark or trade name. *See* 15 U.S.C. § 1125(c)(1). The Second Circuit has recently held that because the FTDA "accords ... special, broad protection only to marks that have a significant degree of distinctiveness," *TCPIP Holding*, 244 F.3d at 95, descriptive marks, which by definition do not possess inherent distinctiveness, are not afforded this protection, even if the mark is

famous or "has acquired a significant degree of consumer recognition." *Id.* at 98.

Since Plaintiff's mark 1–800–PLUMBING is a descriptive mark without inherent distinctiveness, it is not protected under the FTDA. *See id.* Plaintiff's motion for summary judgment on this claim is therefore denied.

## IV. Anticybersquatting Consumer Protection Act

■ Plaintiff cross-moves for summary judgment seeking a finding that Defendants violated the ACPA by registering and using the eight internet domain names. Defendants cross-move for dismissal of her claim, arguing in part, that they did not possess the requisite bad faith intent to profit.

■ The ACPA permits a civil action against a defendant who registers, traffics, or uses a distinctive or famous mark, if the defendant "has a bad faith intent to profit from that mark." 15 U.S.C. § 1125(d)(1)(A). The purpose of the ACPA is "to protect consumers and American businesses ... by prohibiting the bad-faith and abusive registrations of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks." *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.,* 202 F.3d 489, 495 (2d Cir.2000) (quoting S. Rep. 106–140, at 4). The Second Circuit has "expressly note[d] that 'bad faith intent to profit' are terms of art in the ACPA and hence should not necessarily be equated with 'bad faith' in other contexts." *Id.* at 499 n. 13. Instead, the statute provides a list of nine non-exclusive factors which a court may consider in determining "bad faith intent to profit." *See* 15 U.S.C. § 1125(d)(1)(B)(i). Additionally, and importantly, the statute states that "[b]ad faith intent ... shall not be found in any case in which the court determines

that the [defendant] believed and had reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful." *Id.* § 1125(d)(1)(B)(ii). Prior knowledge does not necessarily give rise to an inference of bad faith because adoption of a trademark with actual knowledge of another's prior registration may be consistent with good faith. *See Lang v. Retirement Living Pub'l Co.,* 949 F.2d 576, 583–84 (2d Cir.1991).

As to Campisi's registration of the eight domain names on December 7, 1996, plaintiff argues that bad faith intent to profit is established by the telephone call made to 1–800–PLUMBING from Campisi's residence just ten days earlier. While this evidence supports Plaintiff's position, it is not conclusive. Similarly, as to the posting of the web site by Tele–Name, issues of material fact exist regarding what involvement Defendants had, if any. Therefore, the Court denies both Plaintiff's and Defendants' cross-motions for summary judgment with regard to Plaintiff's ACPA claim.

## V. Defendants' Cross–Motion to Dismiss Campisi and BCPHI

■ Defendants cross-move for summary judgment to dismiss Campisi and BCPHI, asserting that Plaintiff's claims are viable only against Plumbing Group. They argue that any acts by Campisi were in a representative capacity as an officer of Plumbing Group, and that BCPHI's actions were unrelated to the alleged infringement.

However, there exist issues of material fact regarding what roles, if any, Campisi and BCPHI may have played in the alleged infringement. For instance, Campisi initially registered the internet domain names in his own name, and not in the name of Plumbing Group. Additionally, Plumbing Group entered into a contract

with Tele–Name which listed BCPHI's telephone number as the number to which calls placed to 1–888–PLUMBING would be routed. For a period of time, telephone calls made to 1–888–PLUMBING were in fact routed to BCPHI's offices. Drawing all inferences in Plaintiff's favor, a rational jury could conclude that Campisi and BCPHI acted with or as agents for Plumbing Group. The Court, therefore, denies Defendants' cross-motion for dismissal of Campisi and BCPHI.[6]

## CONCLUSION

For the foregoing reasons, Plaintiff's and Defendants' cross-motions for summary judgment are denied. Defendants' cross-motion to amend their pleadings to add an affirmative defense and counterclaim for cancellation of Plaintiff's registered mark premised on the abandonment of her mark is granted. The amended pleading shall be served and filed on or before June 15, 2001. Finally, Defendants' cross-motion to amend their pleadings to add a counterclaim for cancellation of Plaintiff's registered mark on the ground of genericness is denied.

It is so ordered.

---

**6.** Plaintiff also cross-moves for summary judgment on her state law claims. Her Amended Complaint alleges that Defendants caused a likelihood of injury to her business reputation and dilution of her allegedly distinctive mark in violation of N.Y. Gen. Bus. Law § 360 et. seq., and performed deceptive acts and practices in violation of N.Y. Gen. Bus. Law §§ 133, 349 et seq.

However, Plaintiff fails to argue her positions in her memoranda of law. Her only reference is one by incorporation, stating that her motion for summary judgment is "for all seven causes of action stated in the Amended Complaint." *See* Notice of Motion; Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, at 1. The Court is therefore not in a position to grant the cross-motion. Accordingly, the Court denies Plaintiff's motion for summary judgment on both of her state law claims.